DOCTOR DOTY et al. vs. JOHN T. HETH, Adm'r, et al.

1. COVENANTS RUNNING WITH LAND: *Assignees. Under-tenants.*
   Where, in a contract of lease, a mortgage upon the crops to be raised is reserved to protect the rents, it constitutes a covenant running with the land, and is binding upon all subsequent assignees of the lease; but in order to have this effect the assignment must be of the whole or a part of the land for the entire term embraced in the original lease. Where the assignment is for a portion only of the term, the relationship is that of under-tenants, and they are not bound by the covenants.

2. TENANCY: *Cropping on shares.*
   Tenancy usually means legal ownership of a term in the land, which can be subjected to sale under execution, and also the exclusive ownership of the products to be raised thereon. This would be so even where the rent reserved was a portion of the product. In such cases the landlord and tenant would exist, and the legal title to the crop would vest in the tenant. Exactly what relationship is created by a contract to crop on shares is difficult to define. Such contracts are usually regarded as constituting the parties tenants in common of the crop, but not joint tenants or tenants in common of the land.

3. LIEN ON CROPS: *Landlord's claim for rents.*
   Previous to our recent statutes giving and regulating liens on crops there was no lien for rents in this state; hence where, previous to the enactments of said statutes, a land owner leased his land for three years, taking mortgage on the crop to be raised by the tenant to secure his rents, and his lessee employed laborers for one year to make a crop on the shares: *Held*, that in the absence of fraud and unfair contracting between the lessee and his laborers, and in view of the fact that the land owner knew that the crop must be brought into existence by hired labor, and of the custom of the country to raise crops on the shares, the land owner could only subject to his claim for rent the interest or share of his lessee.

APPEAL from the Chancery Court of *Yazoo* County.

Hon. THOMAS WALTON, Chancellor.

The opinion of the court contains a statement sufficient to present the merits of the case.

The action of the court in rendering the decree is assigned for error.

*Hudson & Gwin*, for appellants :

There was no privity between Boyd and appellants, and Gibson had no right to subject the labor and crops of appellants to the payment of his debts. Pars. on Con., vol. 1, pp. 199, 427 ; 2 East, 575 ; Taylor's L. & T., § 448 ; 12 Wend., 555. Unless the whole term and interest is leased. 1 Chit. Pl., 56 ; Bac. Ab., Covenants, e, 3, 4 ; 1 Dallas, 305 ; 6 Johns., 105 ; Douglass, 183 ; Moore, 100 ; 6 Taunt., 300 ; Taylor's L. & T., §§ 108, 109, 110, 111 ; 3 N. Y., 286 ; 5 Cow., 129 ; Co. Litt., 141, 6, 142, *a* ; 1 Woodb. & M., 493.

No action can be maintained by the lessor against an undertenant, upon any covenant contained in the lease. There is no privity. The doctrine in 5 Man. & R., 157, is now overruled. 8 Taunt., 593 ; Jo. & Lat., 134, 156 ; 5 Bing., 24 ; 3 Kay & J., 220 ; 1 Bing. N. C., 19.

As to the contract, see, 15 Wend., 226 ; 3 McCord, 211 ; 8 Johns., 151 ; 1 Gill & J., 226 ; 2 Johns., 421 ; 21 Ill., 200 ; 1 Johns., 267 ; 8 ib., 152 ; 8 Cow., 220.

*J. A. P. Campbell*, on the same side :

Mrs. Boyd transferred to Gibson. This made Gibson *assignee*, as distinguished from *under-tenants* or sub-lessees. Taylor's L. & T., §§ 16, 426. Gibson granted to appellants an interest in the lease less than their own, viz., for one year, and this made appellants *under-tenants* or sub-lessees. Ib., § 426. An assignee is in privity of estate with the original landlord, and is liable to him directly for all covenants which are annexed to the estate so long as he is in possession. He is liable as assignee to pay rent according to the obligation of his assignor for the time he holds as assignee. Ib., § 437. But an *under-tenant* is not bound for rent to the original lessor. Ib., 488 ; Williams on Real Prop., 336 ; 1 Washb. on Real

Prop., 434, 449 ; Bedford *v.* Terhune, 30 N. Y., 458 ; Davis *v.* Morris, 36 ib., 574 ; Kaine *v.* Hoxie, 2 Hilt. (N. Y.), 316.

*W. L. Nugent*, for appellee :

Mrs. Boyd, administratrix of Charles W. Boyd, deceased, holding the lease of the sixteenth section of land in Yazoo county, township 12, range 2, for the unexpired term of her intestate, on January 2, 1871, devised the same to Levi Z. Gibson and L. H. Gibson for $1,100. The lease was to commence January 1, 1871. Ten acres were excepted out of its operations. They were to pay an annual rent or forfeit the lease, and they mortgaged their crops of corn and cotton to secure the annual rents. The lease was properly signed and sealed, but not acknowleged. It was filed for record February 24, 1871. L. Z. Gibson entered into a farming contract with Doctor Doty and other laborers to cultivate the premises. He was to furnish the land, teams, and implements and to find the team ; they were to supply themselves, and the crop to be equally divided. The laborers made mortgages on the crop to pay for supplies furnished by merchants. Hence this contest.

The contract with the laborers is not an assignment *pro tanto*. The parties stood in relation to each other as employer and employé, and not as landlord and tenant. The liability of the lessee was not impaired, but remained valid against him, and the assignee is chargeable in consequence of his privity of estate. The original lessee is chargeable upon his express contract, and the assignee because of his privity of estate. Taylor on L. & T., 371 ; 19 N. Y., 68. The assignee of the lessor may sue in his own name for the rent. 21 Barb., 646 ; 12 N. Y., 296 ; 3 Barb. Ch., 52. In this case, if the laborers were assignees of the lease they subjected themselves to all the covenants, among which are the covenants to pay rent, and the mortgage or alienation, in this case, of the very cotton to secure its payment. Taylor's L. & T., §§ 437, 443, 263. Was it a covenant that run with the land? It certainly

was.   Ib., §§ 260, 261.   The mortgage for supplies was never acknowledged, recorded, or enrolled, and cuts no figure in this case.   The laborers, if assignees, are bound to pay the rent, and bound by the mortgage in the lease as their assignee Gibson.   If regarded as employed at a compensation of half they could make, they are in a predicament equally difficult.   The cotton belonged to the assignor Gibson, and no property in it could pass at all until a division was made.   If *delivered* it would still have been subject to the provisions of the lease.   But the lease in this case was forfeited for non-payment of rent.   The lessor reëntered and took possession of the growing crop, and instituted an action of replevin for the cotton and corn gathered, but not ginned and divided. I see no error in the record.

CHALMERS, J., delivered the opinion of the court.

The merits of this controversy may be better elucidated by discarding the complications growing out of the institution of two proceedings touching the same subject-matter, and by leaving out of view the right of Fouche, the mortgagee of the laborers, who is simply substituted *pro tanto* to their rights in the crop, if any they have.

The following statement is perhaps sufficient to present the merits of the case : Emma Boyd, as administratrix of her deceased husband, in consideration of a yearly rental of $1,100, assigned to Gibson an unexpired lease upon a sixteenth section (school land) in Yazoo county.   The lease had three years to run and was assigned for the entire term.   In order to secure the rent, which was to become due on the 1st of December of each year, there was embraced in the contract by which the lease was assigned a mortgage by Gibson of "all agricultural products grown and produced on the place by him."   Thereafter Gibson entered into a written contract with various laborers, who are the appellants here, which contract is substantially what is known in the country as "cropping on the shares."   By its terms he was to furnish them with land and

mules, and feed for the latter, and farming tools. They were to cultivate and gather the crop and "to divide with said Gibson the entire crops of corn, cotton, etc., that they may make upon his lands, in equal shares, to wit, one-half to said Gibson and one-half to them." The laborers subsequently executed a mortgage to Fouche, a merchant, to cover advances of supplies he might make them during the year.

Gibson failing to pay his rent to Mrs. Boyd at the time specified, and the condition of the mortgage being thereby broken, the latter seized all the cotton which had been gathered, by writ of replevin. The laborers thereupon filed their bill to assert their rights to one-half of the cotton seized. A bill was subsequently filed by the administrator *de bonis non* of Boyd, the widow having resigned.

These are the two causes which are consolidated. It will be seen that the question presented is as to the right of Boyd's estate to subject to the rent claim, secured as it was by mortgage, the shares of the laborers in the crop. The chancellor held that such shares were bound, and from the decree so holding the laborers and their mortgagee, Fouche, have appealed.

The litigation arose previous to the passage of any of our recent statutes giving and regulating liens on crops, and must therefore be considered independently of them.

The decree of the chancellor is sought to be upheld here, and was doubtless rested by him, on the assumption that the rent charge was of itself, or was constituted by the mortgage, a covenant running with the land, and therefore binding on all subsequent holders. This is true as to all subsequent assignees of the lease. Taylor's L. & T., §§ 260, 261, 371, 437, 443, and cases cited.

In order, however, for the covenant to be binding upon subsequent occupants of the land, they must be assignees of the lease for the full term, as to the whole or a part of the land. It seems well settled that if only a portion of the term be held by the party sought to be bound, such party is under-tenant, and not liable to the original lessor. Taylor's

L. & T., § 448; 1 Washb. on Real Prop., 434; Bedford v. Terhune, 30 N. Y., 458; Davis v. Morris, 36 ib., 574; Kain v. Hoxie, 2 Hilt. (N. Y.), 316.

Inasmuch as Gibson's term was for three years, and that of the laborers for but one, the counsel for the latter insists that they were under-tenants, and invokes on their behalf the doctrine just stated. We doubt whether the laborers can be regarded as under-tenants, or as being tenants at all of the land, in any proper legal sense of the word. Tenancy usually carries with it the idea of a legal ownership of a term in the land, which can be subjected to a sale under execution, and also the exclusive ownership of the products to be raised thereon. This would be so even where the rent reserved was a portion of the products. In such case the relation of landlord and tenant would exist, and the legal title to the crop would vest in the tenant. Exactly what relation is created between the parties by the contract to crop on the shares is difficult to define. It is much discussed by the courts of the New England states, where such contracts have been long common, and to some extent in the New York reports.

A somewhat extensive examination of the cases indicates that they are usually regarded as constituting the parties tenants in common of the crops, but not joint tenants nor tenants in common of the land. Many of the authorities are collected in the notes to Freeman on Coten. and Par., § 100.

The subject was before us in Betts v. Ralliff, 50 Miss., 561, where the same conclusion was reached as to the tenancy in common of the crop. The laborers in the case at bar having no tenure or term in the land, or at most an under-tenancy, there could be no privity between them and the original lessor, nor could they be bound by any covenants running with the land.

Was the crop itself bound, either by the contract of rent between the original parties or by the mortgage given to secure the same, in such manner that Gibson could not contract with the laborers to allow them a part thereof for their labor?

There being no lien for rent in this state until the recent statutes establishing it, there was nothing in the nature of the claim to bind the crop in this instance. The mortgage was filed for record on the same day that Gibson made the written contract with the laborers. There is nothing to show which event transpired first, nor any proof of actual knowledge of the mortgage upon the part of the laborers. Apart from this, we are of opinion that the mortgage by Gibson of such agricultural products as " were to be produced by him," in view of the general custom of the country, and of the knowledge on the part of the lessor that the crop must be brought into existence by labor, did not preclude him from contracting for that labor on the terms usual in the country ; and that, in the absence of all fraud, collusion, or unfair contracts between himself and his laborers, all that the mortgagee could fairly claim was to subject his interest in the crop.

The decree will be reversed, with directions to proceed in accordance with the views here announced.

Mr. Justice CAMPBELL, being of counsel, takes no part.