STAPLE COTTON CO-OP. ASS'N v. HEMPHILL.*

(In Banc. Jan. 11, 1926. Suggestion of Error Overruled Feb. 22, 1926.)

[107 So. 24. No. 25055.]

1. AGRICULTURE. *Constitutional law. Construction of statute in favor of constitutionality adopted; co-operative marketing law held not to apply to existing contracts.*

    Where a statute is susceptible of two reasonable constructions, one of which will render it unconstitutional, or gravely impair its constitutionality, and the other construction would save it, or make it inapplicable to the case, the court should adopt that construction which will not impair constitutional rights. Consequently, section 17, clause (c), chapter 179, Laws 1922, does not apply to contracts made prior to its enactment; such section being more than a mere rule of evidence, and conferring substantial rights of substantive law.

2. AGRICULTURE. *Replevin. Replevin does not lie in favor of cotenant; co-operative marketing law held not to change rule that replevin does not lie in favor of cotenant.*

    The writ of replevin does not lie in favor of one cotenant against another cotenant, each of whom are entitled to the joint possession of property; and chapter 275, Laws 1924, does not change this rule. Said statute only gives to marketing associations the right to replevin enjoyed by persons and other corporations.

3. AGRICULTURE. *Member of marketing association may defend replevin by association by showing outstanding title in tenants.*

    Where a marketing association had a contract with one of its subscribers, or members, by which such subscriber, or member, agreed to turn over to the marketing association all of the cotton produced by or for him, or to which he had acquired title or interest, the marketing association to market the cotton for the account of the member, or subscriber, and where such marketing association sues out a replevin to obtain possession of property, to which it claimed to have the right to market under its contract the member may defend such replevin by showing outstanding title in his tenants.

---

*Corpus Juris-Cyc. References: Agriculture, 2 C. J., pp. 989, n. 26; 997, n. 2; Constitutional Law, 12 C. J., p. 788, n. 1; Replevin, 34 Cyc., pp. 1387, n. 55; 1393, n. 99.

APPEAL from circuit court of Sharkey county.

HON. E. L. BRIEN, Judge.

Replevin by the Staple Cotton Co-operative Association against L. S. Hemphill. From a judgment for defendant after a peremptory instruction, plaintiff appeals. Affirmed.

*R. C. McBee,* for appellant.

L. S. Hemphill entered into a contract with the association by which he agreed to sell and deliver to the association all of the cotton produced or acquired by him, or in which he had any interest, during the years 1921 to 1925, inclusive. The cotton in controversy had been picked and ginned, and according to the contention of the association, was in the possession of Hemphill. He did not deliver the cotton in accordance with his contract, but contended that the cotton should be sold by his tenants, and the proceeds divided, instead of being sold by the association, and refused to turn the same over to the association. The marketing agreement and the method of doing business by the association were before this court in *Brown* v. *Staple Cotton Co-operative Ass'n,* 132 Miss. 859-889. By chapter 275, Laws of 1924, the legislature granted to the association the remedy of replevin.

The marketing agreement is not to be construed as a sales agreement. This court held in *Brown* v. *Association, supra* (speaking of the association): "It is simply a sales agency or plan for group marketing." See, also, *Cole-McIntyre-Norfleet Co.* v. *Dubard,* 135 Miss. 20. The agency is in fact and in law, an irrevocable one. Exactly the same kind of a contract was before the supreme court of Oregon in the *Phez Co.* v. *Salem Fruit Union,* 103 Ore. 514, 201 Pac. 222, 25 A. L. R. 1090.

We have not here a case of a sale or a contract of sale, which is to be governed by the passing of the title and under which circumstances this court has uniformly held that a suit in replevin does not lie, but this case is governed by the law of principal and agent. 31 Cyc.

1198; 23 R. C. L. 1216; *Ferry* v. *Hall,* 188 Ala. 178, 66 So. 104, L. R. A. 1917 B. 620; *A. J. Nelson Mfg. Co.* v. *Mange & Sons,* 77 So. 494.

The term *owner,* as used in the replevin statutes, does not mean absolute and unqualified title, but means a right to possession. Any interest coupled with a right of possession constitutes ownership under these statutes. Cobbey on Replevin, 284; *Harlow* v. *St. Louis Mutual Life Ins. Co.,* 54 Miss. 177.

II. *Did Hemphill have title to the cotton or was the title vested in his tenants?* As we understand the ruling of the lower court, a peremptory instruction was granted to the defendant because he had a contract with his tenants by which they were to sell the cotton produced and pay to him one-fourth of the proceeds thereof, and that, therefore, the cotton was the property of his tenants, and not his.

There is no dispute that the relation of landlord and tenant existed between Hemphill and his tenants. He had furnished the land, teams and farming implements, and his tenants had furnished the labor to make and gather the crops, the proceeds of which, when sold by the tenants, were to be divided between them. Under such conditions, it is plain that the relation of landlord and tenant existed. *Alexander* v. *Zeigler,* 84 Miss. 560.

In the case at bar the right of the association to the immediate possession had come into existence under its contract. This right was against the landlord for the landlord's share of the crop and it is submitted, under the authority of the above case, that the association had the right to maintain its action in replevin as soon as it became entitled to the right of immediate possession. The supreme court of Texas has decided the exact point herein involved, and decided it in favor of the contention here made. *Long* v. *Texas Farm Bureau Cotton Ass'n,* 270 S. W. 561; *Main* v. *Texas Farm Bureau Cotton Ass'n,* 271 S. W. 178.

Under the authorities above cited, the association had the right to recover in this suit and to maintain its action in replevin against Hemphill. Therefore, we submit that the judgment of the lower court should be reversed.

*Clements & Wright* and *E. O. Sykes,* for appellee.

I. An action of replevin does not lie under the facts of this case. *Doty* v. *Heth,* 52 Miss. 530; *Holton* v. *Binns,* 40 Miss. 491; *Willes* v. *Lobe,* 59 Miss. 169; *Hough* v. *Rogers,* 67 Miss. 208; *McDonald* v. *Bailey,* 25 Okla. 849; *McKinney* v. *May,* 39 Ark. 442; *Upham* v. *Allen,* 76 Mo. App. 206-212; *Bain* v. *Trixler,* 56 N. E. 690, 80 A. S. R. 751, 23 R. C. L. 870; *Jackson* v. *Stockard,* 9 Baxt. (Tenn.) 260; *Schwarz* v. *Lee Gon,* 46 Ore. 219; *Ward* v. *Worthington,* 33 Ark. 830; *Hart* v. *Morton,* Ark. 447; *Titsworth* v. *Frauenthal,* 52 Ark. 254; *Ellis* v. *Culver,* 2 Harr. (Del.) 129; *Gossett* v. *Drydale,* 48 Mo. App. 430; *Hill* v. *Robinson,* 16 Ark. 90; *Person* v. *Wright,* 35 Ark. 169; *Moseley* v. *Cheatham,* 62 Ark. 133.

II. Possession of the property by defendant at the time of the suing out of the writ of replevin is essential to maintain the action. Section 3043, Hemingway's Code; *McCormick* v. *McCormick,* 40 Miss. 760; *Griffin* v. *Lancaster,* 59 Miss. 340; *Myrick* v. *Nat'l Cash Register,* 25 So. (Miss.) 155; *Vaugh* v. *Huff,* 99 Miss. 110.

III. Chapter 179, Laws of 1922, has no application to the contract herein, because enacted subsequent to the making of the contract; to-wit: December, 1921. Sections 14, 16 and 24 of the state constitution; *Hazzard & Chapin* v. *I. C. R. R. Co.,* 67 Miss. 32; *R. R. Co.* v. *Bent,* 94 Miss. 681; *Brown* v. *Ass'n,* 132 Miss. 859; *Richards* v. *City Lumber Co.,* 101 Miss. 691-692; *Coal & Coke Co.* v. *Cincinnati R. & A. Electric St. Ry.,* 28 Ohio Civ. Ct. 618; *Winn* v. *Whitehouse,* 96 Ark. 42, 131 S. W. 70, 95 Ark. 623, 97 Ark. 467; *Goldstein* v. *Maloney,* 62 Fla. 198, 57 So. 342; *Taylor* v. *Anderson,* 40 Okla.

316, 51 L. R. A. (N. S.) 731; *Bradform* v., *Durham,* 101 Pac. (Ore.) 897, 135 Am. St. Rep. 807; *Columbia Valley Trunk Co.* v. *Smith,* 56 Ore. 6, 107 Pac. 465.

*R. C. McBee,* in reply, for the appellant.

Chapter 275, Laws of 1924, was not designed to bestow a remedy already in existence. Its title shows that its true purpose was to "provide further and additional remedies for the enforcement of marketing agreements of co-operative associations." The basis of such an action, therefore, was to be a contract, and the action was not to be *ex delicto* as in an ordinary case of replevin.

Now by the statute all that was necessary was that the co-operative association, in order to maintain the action of replevin to obtain the possession of personal property, must be entitled to the "immediate possession" of the same. This was the one essential required. Five essentials are necessary in the ordinary action. They are numbered (a) to (e), inclusive, in section 3043, Hemingway's Code.

Chapter 275, Laws of 1924, is a remedial statute. 36 Cyc. 1174. Such statutes have necessarily been passed on by this court, as from time to time remedial legislation has been adopted by the legislative department of our state government. *J. & T. Green* v. *Anderson & Helzheim,* 39 Miss. 359; *Excelsior Mfg. Co.* v. *Keyser,* 62 Miss. 155; *Holly Springs* v. *Marshall County,* 104 Miss. 752, 61 So. 703; 36 Cyc. 1174.

Under the law, as it stood before the enactment of chapter 275, Laws of 1924, courts of law were practically closed to co-operative associations, insofar as they might seek to enforce their marketing agreements. The remedies for the enforcement of such agreements were set out in section 17 (b), chapter 179, Laws of 1922. Co-operative marketing associations were there given the remedy of injunction to prevent breaches or further breaches and to a decree of specific performance. While an injunction might preserve the *status quo* and cause

the member to hold his cotton pending the outcome of the litigation, it would finally result in a decree of specific performance. These remedies did not, however, have the desired effect. If a co-operative marketing association is to function successfully, it must have the products of its members delivered to it in accordance with the marketing agreement. The legislature believing the remedy best suited for the purpose of co-operative marketing associations to be that of replevin, by chapter 275, Laws of 1924, gave such associations such a remedy, and at the same time provided what was necessary for such associations to resort thereto. The only requirement that the legislature imposed was that the association should be entitled to the ''immediate possession'' of the property. The right to the ''immediate possession'' of the property had already been prescribed by the legislature in section 16, chapter 179, Laws of 1922.

The remedy afforded was a new remedy designed to confer upon co-operative marketing associations remedies not theretofore given by law. We submit that a fair and reasonable construction of chapter 275, Laws of 1924, does not require a co-operative marketing association to allege or prove those things necessary in an ordinary action of replevin, but only to allege and prove those things necessary by its terms.

*In an ordinary action of replevin the defendant may be estopped to assert that the property in controversy was not in his possession.* By the testimony of Hemphill, he joined the association and signed its marketing agreement in 1921, delivering to them, with the consent of his tenants, the entire crop grown on his property during that year. He did exactly the same thing during the years 1922 and 1923. He and they construed his contract with the association to mean that all of the cotton grown on his premises should be delivered to the association under the marketing agreement. Now the marketing agreement did not say all the cotton grown on his premises. Its provision was that he should deliver all of the cotton

"produced or acquired by or for him" and all cotton "in which he had any interest." Having for three years, with his tenants, so construed this contract, he cannot during the fourth year, abruptly about face and say that it has no such meaning. See *Ramsey* v. *Brown*, 77 Miss. 124. *Judd* v. *Delta Grocery & Cotton Co.*, 133 Miss. 866, 98 So. 243, completely destroys counsel's theory that the association is entitled to only one-fourth interest in the cotton, and that he could not confer upon the association the right to sell the remaining three-fourths, which right he did not possess himself.

Both Hemphill and his tenants were bound by the marketing agreement, not only on the ground of estoppel because of their previous dealings, and not only because they themselves by their previous contract had construed the marketing agreement to mean that all the cotton grown on the place was to be delivered under it; but because the marketing agreement, having been made in 1921, was prior to and takes precedence of the subsequent annual agreements entered into between Hemphill and his tenants. *Oregon Growers' Co-operative Ass'n* v. *Lentz*, 107 Ore. 561, 212 Pac. 811; *Feagin* v. *Dark Tobacco Growers' Co-operative Ass'n*, 261 S. W. 607.

Counsel argues that the statute above referred to has no application to the present case, since he says it is unconstitutional, "being retroactive and violating the right of contract between the parties in this case, as affecting the contract made between them in December, 1921."

We may admit, as far as this case is concerned, that the statute is unconstitutional when the point is raised by the tenant whose cotton is taken, but the landlord, for whom the cotton is taken by his selling agency, a co-operative marketing association, for the purpose of being marketed and the proceeds turned over to him, cannot complain. 12 C. J. 762-763; Cooley's Const. Limitations (7 Ed.), p. 232, 8 Cyc. 787; *N. & S. R. R.* v. *Crawford*, 99 Miss. 697-718.

Argued orally by *R. C. McBee*, for appellant, and *E. O. Sykes*, for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was plaintiff below, and sued out a writ of replevin against the appellee for certain cotton, alleging that it was entitled to the possession of said cotton by virtue of a marketing agreement entered into between the plaintiff and the defendant for the years 1920, 1921, 1922, 1923, and 1924. The writ of replevin was sued out under the authority of chapter 275, Laws of 1924, section 1 of which reads as follows:

"That all co-operative marketing associations organized or doing business under the laws of the state of Mississippi may obtain the possession of personal property to the immediate possession of which they may be entitled, by the action of replevin, and the giving of this means of enforcement of rights shall not be in lieu, or in repeal of any other rights or remedies now given to co-operative marketing associations under the laws of the state of Mississippi."

The pertinent part of the marketing contract reads as follows:

"Sec. 2. The association agrees to buy and the grower agrees to sell and deliver to the association all of the cotton produced or acquired by or for him during the years 1920, 1921, 1922, 1923, 1924. If the required minimum is not secured by September 15, 1920, the crop of 1920 shall be excluded and the crop of 1925 shall be added thereto."

"Sec. 4. (a) All cotton shall be delivered at the earliest reasonable time after picking or ginning, to the order of the association, at the warehouse controlled by the association; or at the nearest public warehouse, if the association controls no warehouse in that district; or by shipment as directed, to the association, and by delivery of the indorsed warehouse receipts or bills of lading properly directed.

"(b) Any deduction or allowance or loss that the association may make or suffer on account of inferior

142 Miss.—20.

grade, quality or condition at delivery shall be charged against the grower individually.

"(c)   The association shall make rules and regulations and provide inspectors or graders or classifiers to standardize, grade, and class the quality and method and manner of handling, pressing and shipping such cotton; and the grower agrees to observe and perform any such rules and regulations and to accept the grading established by the state and federal authorities and the association."

"Sec. 11.   The grower shall have the right to stop growing cotton and to grow anything else at any time at his free discretion; but if he produces any cotton, or acquires or owns any interest in any cotton, during the term hereof, it shall be included under the terms of this agreement, and must be sold only to the association.

"Sec. 12.   Nothing in this agreement shall be interpreted as compelling the grower to deliver any specified quantity of cotton per year; but he shall deliver all the cotton produced or acquired by or for him.

"Sec. 13.   (a)   This agreement shall be binding upon the grower as long as he produces cotton directly or indirectly, or has the legal right to exercise control of any commercial cotton or any interest therein during the term of this contract.

"(b)   If any growers sign this agreement as copartners, or as a copartnership, they shall each be bound by all the provisions hereof individually, in the event of a dissolution of their copartnership."

The sheriff seized and levied upon twenty-three bales of cotton, and made return that same had been executed by taking into his possession twenty-three bales of cotton, described in the affidavit, found in the possession of L. S. Hemphill, the defendant, and that he had summoned the defendant in accordance with the command of the writ.   The defendant filed his plea of not guilty, and gave notice thereunder that he would offer in evidence proof that he did not own the cotton de-

Sept., 1925] Cotton Co-op. Ass'n v. Hemphill. 307

142 Miss.] ·Opinion of the Court.

scribed in the affidavit and writ, but that the cotton belonged to his tenants, who were renters of his property, except one bale, which was raised by a negro tenant on the property of the defendant, working on halves, one-half of which bale of cotton was owned by such tenant; that said bale had never been divided, nor had defendant's half ever been turned over or delivered to him, and the cotton was not in the possession of the defendant; that defendant would offer proof to show that he had no interest in kind in the cotton replevied; that the cotton had been turned over to him to pay rent at the time of the suing out of the writ, and that he only had a landlord's lien under the statute. Issue was joined between the plaintiff and the defendant. The tenants filed affidavits claiming the cotton in controversy.

The plaintiff on the trial offered in testimony its charter and by-laws and a certificate from the secretary of state of Mississippi, duly certifying that the plaintiff had filed a certified copy of its articles of association in the secretary of state's office and had complied with the law authorizing it to do business in the state of Mississippi. The plaintiff then introduced the defendant as a witness, who testified that he owned the plantation in Sharkey county, Miss., consisting of four hundred acres, three hundred fifty acres of which were in cultivation; that in December, 1921, he became a member of the association and signed its marketing agreement. He identified the said agreement signed by him when that agreement was offered in evidence. He testified that in 1921 he delivered forty-odd bales of cotton to the association under this agreement; that in 1922 he delivered sixty-five bales of cotton to said association; that in 1923 he delivered ninety-four bales of cotton to said association; that during these years his cotton had been ginned in Catchings, Sharkey county; that the association had received this cotton and settled for it.

The defendant further testified that on the day the writ was issued he had delivered no cotton to the associa-

tion for the year 1924; that the cotton in controversy had been grown on his plantation, and at the time of the levy by the sheriff was located in a ginyard of the Delta City Gin Company, about one and one-half miles from his plantation; that said cotton had been grown by various tenants and share hands that worked for him. He testified that his tenants were renting his land for one-fourth of the proceeds of the crop, cotton and seed; that the cotton had been ginned and the seed sold; one bale of cotton grown by the tenants was burned; this bale was insured in defendant's name for loss by fire, and he collected the insurance; that at the time this bale was burned it was on the gin lot; that all of his tenants owed him money, which he had advanced for making the crop, and that he had a landlord's lien to secure the same. He would not state the exact amount due him by the tenants. He testified that the amount of the debts due by the tenants was to be paid out of the three-fourths proceeds belonging to the tenants; that one of the tenants worked on halves; that he agreed with the tenants that they might sell the cotton without consulting him as to the price or to whom they might sell; that all of the contracts were verbal contracts, made in December, 1923, or in January, 1924; that he had the same contracts with his tenants before and since belonging to the association; that in 1921, 1922, and 1923 he bought the tenants' cotton, but that in 1924 he was not able to buy their cotton; that before he became a member of the association he had always sold his tenants' cotton to cotton buyers; since he became a member of the association he had delivered his tenants' cotton to the association up until the year 1924, but that he could not deliver his tenants' cotton to the association in the year 1924, because he was not able to buy the cotton from his tenants; that all of the cotton in controversy had been hauled to the gin, and that no tenant had sold a bale of cotton or attempted to remove such cotton from the gin; that all of the other years he had been farming he had had the same contract with his

tenants, and that this was the method by which the cotton had been delivered to him, but that there had been no delivery to him in the year 1924.

There was a peremptory instruction for the defendant in the court below.

It is the contention of the appellant that the defendant had possession of the cotton, and that his marketing agreement was binding upon both him and the tenants, and that under the provisions of clause (c), section 17, chapter 179, Laws of 1922, the law conclusively presumes that the products produced by any person, firm, or corporation during the period of time covered by such marketing contract on the land of such member, however and by whomsoever produced, are the products of such member, and as such are subject to the said marketing contract, if the said products have been grown or acquired under any contract between such member and such other person, firm, or corporation, entered into after the execution of the said marketing contract, and in such actions the foregoing remedies for nondelivery or breach shall lie and be enforceable against such person, firm, or corporation.  Certain authorities from other states are relied upon to sustain the claim advanced under this last-named statute.

Inasmuch as this statute seems to make the presumption conclusive, it would, if followed at all, be more than a mere rule of evidence.  It would, if upheld, be a matter of substance, creating an absolute right, binding upon every person who made a contract after its enactment. Wherever a statute is susceptible to two constructions, one of which will render it unconstitutional, or gravely endanger its constitutionality, and another reasonable construction would save it, or make it inapplicable to the case, the court should adopt that construction which would not impair constitutional rights.  It would be difficult to see how a party to a contract would be concluded by its terms unless he had notice of the contract which

would bind him, and this notice should be affirmatively shown.

The power of the legislature to enact conclusive presumptions is at least doubtful. *Bailey* v. *Alabama,* 219 U. S. 219, 31 S. Ct. 145, 55 L. Ed. 191. We therefore think the statute should not be given a construction that will make it applicable to contracts made before its enactment and, as the contract here involved was executed prior to the enactment of chapter 179, Laws of 1922, we think it is not governed by that statute. The obligations of the contract are fixed when the contract is made, and under the constitutional provisions of both the state and federal constitutions the obligations of a contract cannot be impaired, to affect the rights of either party to the contract. This rule does not apply to mere rules of procedure in court, and rights may be enforced by new remedies, or the remedies may be changed, so long as they do not affect substantial rights of the parties.

There seems to be some difference in the holding of this court in *Doty* v. *Heth,* 52 Miss. 530, and the holdings in *Schlicht* v. *Callicott,* 76 Miss. 487, 24 So. 869, and *Alexander* v. *Zeigler,* 84 Miss. 560, 36 So. 536. The first case, *Doty* v. *Heth,* seems to hold that the landowner and the share cropper are cotenants of the farm products grown upon the premises, while the last two cases seem to hold that the relation of landlord and tenant exists, and that the rights of third persons are governed by the law of landlord and tenant.

Without undertaking to decide which is the correct holding, but treating the case as though the landowner and the share cropper were cotenants, but not so deciding, we think the suit of the plaintiff must fail, because it is not entitled to the immediate possession of the property to the exclusion of the tenants, and that it must be entitled to the immediate possession of such property as against both the landlord and the tenant, and the landowner and the share cropper, before it is entitled to the remedy by replevin created by chapter 275, Laws of 1924.

Under the provisions of that statute, chapter 275, Laws of 1924, it is provided that all co-operative marketing associations organized or doing business under the laws of the state of Mississippi may obtain possession of personal property to the immediate possession of which they may be entitled, was enacted merely to give such association the right to the remedy of replevin, where it had the right to the exclusive possession of the property.

Conceding, for the sake of this opinion only, that the association under its contract was subrogated to all the rights of Hemphill, the defendant, it still would not have the right to the exclusive possession of the cotton. In *Holton* v. *Binns,* 40 Miss. 491, this court held that joint owners of personal property have each an equal right to the possession of the joint property, and hence an action of replevin will not lie in favor of one joint owner against another.

. The appellant insists that the defendant is not in a position to avail himself of this rule because he is not interested in the tenants' rights and cannot assert them for the tenants. The trouble with this position is that the plaintiff must recover upon its own rights, and not upon the weakness of the defendant's position. Unless the plaintiff had a right to the exclusive possession of the cotton, it could not maintain replevin.

The defendant is permitted to show any facts that will protect him from the cost and the litigation that might follow the turning over of the cotton to the association at the suit of his tenants. Unless the defendant had such possession as would enable him to turn the cotton over in satisfaction of his contract, he may defend the suit against the cotton being taken from him by a third party. The plaintiff had no right to the possession of all the cotton, and its only right under its contract is to sell the cotton for the account of the defendant, taking its profit and compensations under the contract. It manifestly could not carry out its contracts, unless it had the right to sell all interest in the cotton, and as the cotton was

undivided, and no particular part belonged exclusively to
Hemphill, the writ of replevin was the wrong remedy for
the plaintiff to have pursued.

The judgment of the court below will therefore be af-
firmed.

*Affirmed.*