## W. J. KENDALL *v.* THE CITY OF CANTON.

1. MUNICIPAL OFFICE.    *Abolished by legislature.   Action for damages. Case in judgment.*

On the 1st January, 1873, K. was appointed by the mayor and aldermen of the city of Canton to the office of cotton weigher for one year, for which he paid $1,000. On the 8th of April, 1873, the legislature passed an act taking from the city of Canton the power of appointing a cotton-weigher, and vesting such power in the board of supervisors of Madison County, and repealing all of the ordinances of the city on that subject; and thereupon the mayor and aldermen formally repealed the ordinance under which K. was appointed. K. sued the city of Canton for damages for removing him from office. *Held*, that the act of the legislature abolishing the office to which K. had been appointed was the exercise of a *vis major*, which K. and the city authorities were alike unable to resist.

2. LEGISLATIVE OFFICE.    *Power of legislature.*

The legislative power to terminate at pleasure the incumbency of a statutory office, either by an abolition of the office itself, or by a change in the tenure, or the mode of appointment, is well settled.

ERROR to the Circuit Court of Madison County.

Hon. W. B. Cunningham, Judge.

The statement of this case appears fully in the opinion of the court.

*Potter & Green,* for the appellant.

1. In its incipiency no one has a superior right to an office than his neighbor. The will of the elective power determines who shall occupy it; no one has title to it; title rests with the elective power, and must be granted by it before any one can claim it. After the grant, the grantee has the vested right to occupy it for the term to the exclusion of every one. By the rendition of the services a consideration inures to the elective power for the salary paid. The incumbent receives the salary as a consideration for the services, and he receives it *pro tanto* for services rendered. The consideration to both grantor and grantee is measured by the amount of the consideration moving from the other side. No consideration is paid for the office: the only considerations are the mutuality of considerations

arising after the grant, commensurate with the services rendered on the one side, and the salary on the other. Either party can terminate the relation at any time: the grantor by abolition of the office, the other by resignation; in neither instance would an action accrue to the one against the other for refusal to perform for the future; yet for *past* salary due an action will lie. Hence this relation is a *divisible* contract. 1 Story on Contracts, 15; *Conner* v. *New York*, 5 N. Y. 296; *Swann* v. *Turner*, 23 Miss. 565; *Butler* v. *Pennsylvania*, 10 How. 416; *Swann* v. *Buck*, 40 Miss. 301. But the appellant paid a consideration for this employment for a certain time. The differences between the appellant's rights and those of an officer's are, that the former paid a consideration for the grant; the officer pays no consideration for the grant, but it arises after the grant by the rendition of services. The appellant's term was fixed by contract, the other's by law. The former is protected by the Constitution, the latter is not; hence the act of 1873, so far as it affects the appellant's rights, is void.

2. Even though an officer, yet, having paid a consideration for the grant, he had a vested right by purchase in it, and it was not competent for the legislature to deprive him of it. In this it is like exemption from taxation by law for a consideration which binds subsequent legislation by virtue of its being a contract within the inhibition of the Constitution. *New Jersey* v. *Wilson*, 7 Cranch, 165; 2 Story on the Const. § 1391, note 3.

3. If an officer, and conceding an office to be no contract within the Constitution, yet the act of 1873 is void, because it is a legislative declaration of a forfeiture.

An officer has a *vested legal right* to exercise the employment during his term, to the exclusion of every one, unless he resigns, or the office is abolished, or a forfeiture is established. It is competent for the legislature to *abolish* an office; but so long as it exists the incumbent has a vested legal right to and property in it for the term. *Marbury* v. *Madison*, 1 Cranch, 162; *Dartmouth College* v. *Woodward*, 4 Wheat. 699, 700; *Hoke* v. *Henderson*, 4 Dev. 17; *State* v. *Smedes & Marshall*, 26 Miss. 47. Can the legislature, while continuing the office, deprive him of this vested right and property in it, by merely

changing the mode of filling it? This estate at common law could only be forfeited by *nonuser* or *misuser;* and the same rule obtains here. The ascertainment and declaration of the forfeiture must be done *judicially.* 4 Cooley's Black. Com. 152, note 4; Angell & Ames on Corporations, § 777; *Smith* v. *Mississippi Railroad,* 6 S. & M. 179. The legislature cannot declare a forfeiture: it is strictly a judicial function, and vested by the Constitution in the judiciary. Legislating out of office is the declaration of a forfeiture. *State* v. *Smedes & Marshall* and *Hoke* v. *Henderson, ubi supra.* Hence the act of 1873, changing the mode of filling the office during the appellant's term, and by which the appellant was ousted, being a legislative declaration of a forfeiture, is void.

4. Sect. 2267 of the Code 1871 is in conflict with § 29, art. 1, of the Constitution, in this, that it creates a State office, and does not fix the term. The Constitution prohibits life offices or terms at the discretion of any one. The office would then have no term, and in that event § 307 of the Code would fix it at four years.

In this case, however, as the board had contracted for a year, they are estopped to say that that was not their discretion.

This power of removal is the same thing as the declaration of a forfeiture, a power which the legislature did not have, and hence cannot delegate. As shown before, the only way to declare a forfeiture is judicially.

*J. A. P. Campbell,* for the defendant in error.

The single question in this case is whether a cotton-weigher, appointed by the municipal government of the city of Canton in pursuance of § 2267, Code 1871, and legislated out of office by the act of the legislature found on p. 332, Pamphlet Acts of 1873, can recover damages from the city for his deprivation of office. The appointment was made by virtue of an act of the legislature; and when another act of the same body abolished the office, as conferred by the city on Kendall, he was *ipso facto* out of office, and could not complain of the loss of future emoluments from the office. The uncontrolled power of the legislature must be conceded as to all offices existing by virtue of legislative enactment. *State* v. *Smedes & Marshall,* 26 Miss.

47; *Swann* v. *Buck*, 40 Miss. 296; Cooley's Constitutional Limitations, p. 276 *et seq.;* Dillon on Municipal Corporations, § 168; *O'Leary* v. *Adler*, 51 Miss. 28.

The charter of Canton conferred no power to appoint a cotton-weigher. The ordinance under which Kendall was appointed was by virtue of § 2267 of the Code. He was to pay a privilege tax. He was legislated out of office by the legislature which made both the code and the city of Canton. Thereby he ceased to be cotton-weigher. It was no longer lawful for him to weigh cotton. It would be monstrous to hold Canton liable in damages for the consequences of what the legislature did.

Kendall does not sue for a return of any part of his privilege tax paid. He does not pretend that the city has done him any wrong in reference to this. His claim is for damages for what the city did, when, if it had not done it, it would have been unlawful for him to weigh a bale of cotton. The act of 1873 repeals the ordinance under which Kendall was appointed. It *destroys* the office as formerly existing under § 2267 of the Code.

Chalmers, J., delivered the opinion of the court.

The declaration alleges that the plaintiff was, by the mayor and aldermen of the city of Canton, on the first day of January, 1873, elected to the office of cotton-weigher of all cotton bought and sold within the corporate limits of said town, for one year from the date of said election; that he agreed to pay for said privilege the sum of $1,000, of which amount he actually paid $400; but that afterwards, before the expiration of his term, to wit, on the ―― day of 1873, the said mayor and aldermen wantonly and wrongfully removed him from his said office without cause; wherefore he brings suit, and lays his damages at $5,000.

The defendant pleaded that at the date of the plaintiff's election there was in force an ordinance of the city providing for the election of a cotton-weigher to weigh all cotton sold in said city, and imposing a penalty on all others weighing cotton to be sold therein, and that the plaintiff was duly elected and qualified thereunder; that afterwards, to wit, on 8th of April,

1873, the legislature of the State passed an act, entitled " An Act to authorize the Board of Supervisors of Madison County to appoint cotton-weighers therein, and for other purposes," (acts of 1873, p. 332), whereby the power of appointing cotton-weighers throughout the county was taken from the city authorities and vested in the board of supervisors, and all ordinances of the city on the subject were by the terms of the act expressly repealed, and that thereupon the mayor and aldermen of the city repealed their ordinance on the subject.

To this plea the plaintiff demurred, upon the ground that the act of the legislature recited was unconstitutional, and, if valid, was no excuse for the repeal of the defendant's ordinance. This demurrer was by the court below overruled, and the plaintiff declining to plead further, judgment final was entered for the defendant, from which the plaintiff appeals.

By § 2267 of Code 1871, the municipal authorities of incorporated towns were empowered to appoint cotton-weighers, who should possess the exclusive right to weigh cotton therein, at a compensation to be prescribed by the local government, and who should be removable at their discretion. It may well be doubted whether under this statute it was competent for the mayor and aldermen to appoint a person to office, by contract or otherwise, for any term which would prevent themselves or their successors from exercising their discretionary power of removal. However this may be, it is clear that they could not by any contract deprive the legislature of its right to change, alter or abolish the office at pleasure. When that body, therefore, by the act of 8th April, 1873, virtually abolished the office to which the plaintiff had been appointed, and repealed all ordinances of the city of Canton in conflict with this enactment, it was the exercise of a *vis major*, which the plaintiff and the authorities of the city were alike powerless to resist.

Counsel for the plaintiff are correct in saying that while an election or appointment to office is not a contract in its broadest sense, it does so far partake of the attributes of a contract as to entitle the incumbent to recover all salary accruing during

his incumbency; but there is no demand here for salary earned and in arrear. The action sounds wholly in damages, and proceeds upon the idea of a vested right to hold for the full term for which the plaintiff had been elected. Nothing is better settled than the legislative power to terminate at pleasure the incumbency of a statutory office, either by an abolition of the office itself or by a change in the tenure or the mode of appointment. If the plaintiff paid out his money to secure an election to such an office, he did so subject to the risk of the legislative exercise of this power, and he cannot demand damages at the hands of those from whom he received the position, because a superior authority has put an end to his term.

Another view seems equally fatal to the plaintiff's case. There is no allegation that there were any emoluments of office to be received from the city, nor was any demand for such contained in the declaration. The inference is that the compensation was to be derived from the owners of the cotton weighed. If, as contended by the plaintiff, the act of the legislature was unconstitutional, he remained the lawful cotton-weigher of the. city, as much after its passage as before, and the act of the mayor and aldermen, in repealing the ordinance under which he had been elected, was inoperative as to him, and did him no harm. He should, therefore, have continued in the discharge of his duties, and invoked the protection of the law against all persons who interfered with his monopoly by assuming to weigh cotton within the corporate limits.

*Judgment affirmed.*

CAMPBELL, J., having been of counsel, took no part in this decision.