JOHNSON, STATE REVENUE AGENT, *v.* REEVES & Co.

[72 South. 925.]

1. CONSTITUTIONAL LAW. *Favoring constitutionality. Legislative power. State revenue agent. Vested rights. Obligation of contract's office. Contract. Statutes. General and special. Taxation. Exemptions. Construction. General rules. Dismissal and non-suit. Grounds. Abatement of statute.*

The power to legislate is vested in the legislature and before the court can strike down an act of the legislature as unconstitutional it must put its hands upon the exact provision of the Constitution which denies to the legislature their power to pass the act, and not only to point out the provision or provisions that are violated, but to hold beyond a reasonable doubt that the act conflicts with such provision of our organic law.

2. CONSTITUTIONAL LAW. *Legislative power. State revenue agent.*

The office of state revenue agent is a legislative and not a constitutional office. The legislature has the unquestioned right at any time to prescribe the duties of this officer or to curtail his power or it may abolish the office altogether.

3. SAME.

An office is not a contract, and the incumbent has no vested interest in the term, fees, or emoluments thereof.

4. STATUTES. *General and special acts. Taxation.*

Acts 1916, chapter 231, amending Code 1906, section 4750, providing that all authority of the state revenue agent to prosecute suits or appeals to assess for taxation an agricultural product are revoked and annulled and that appeals shall abate and be dismissed, is a general law and not in violation of Constitution 1890, section 87, prohibiting special and local laws.

5. SAME.

Such statute does not exempt property from taxation, levy or sale nor is it intended to create, increase or decrease the fees, salary, or emoluments of any public officer, and is therefore not violative of any of the provisions of section 90 of the Constitution of 1890.

6. SAME.

Such statute does not violate section 100 of the Constitution since it does not remit, release, postpone or diminish the fixed liability or obligation of any taxpayer. It does not undertake to declare that those who owe past due taxes on agricultural products are or shall be freed from such liability.

7. STATUTES. *Construction. General rules.*

  In construing an act the court must look to the act as a whole and not hang upon a single word therein.

8. DISMISSAL AND NONSUIT. *Grounds. Abatement by statute.*

  Where by statute certain actions are abated and power to maintain them is taken away, the trial court is without jurisdiction to further proceed and must dismiss such actions.

APPEAL from the circuit court of Warren county.

HON. E. L. BRIEN, Judge.

Suit by J. C. Johnson, State Revenue Agent, against Reeves & Company. From a judgment of the circuit court dismissing plaintiff's appeal from the decision of the board of supervisors and abating the suit, plaintiff appeals.

In May, 1915, appellant, as state revenue agent, caused George P. Reeves & Co., cotton buyers of Vicksburg, Miss., and appellees herein, to be back-assessed on a large number of bales of cotton for the years 1909 to 1914, both inclusive, in accordance with the provisions of section 4740, Code of 1906. Written objections were filed against said assessment by appellees, and upon hearing by and before the board of supervisors of Warren county the board "disallowed and discharged" the assessment thus attempted to be made by the revenue agent, and from this order of the board appellant prosecuted an appeal to the circuit court of Warren county. While this appeal was pending in the circuit court, and on March 21, 1916, the Legislature of the state of Mississippi passed an act, being Senate Bill No. 310, amending section 4750 of the Code, providing that the revenue agent at the expiration of his term of office should deliver the documents of his office to his successor and requiring the successor to allow all suits theretofore commenced to be conducted in the successor's name. Senate Bill No. 310 read as follows: "An act to amend section 4750 of the Code of 1906, providing for the delivery by the state revenue agent of documents to his successor, and the

abatement and prosecution of assessments, suits and appeals instituted by him.

"Section 1. Be it enacted by the legislature of the State of Mississippi, that section 4750 of the Mississippi Code of 1906 be amended to read as follows:

" '4750 (4201). *Deliver Documents to His Successor.*—The state revenue agent, at the expiration of his term in office, shall deliver to his successor all books, papers and documents pertaining to the office. The successor shall allow all suits commenced, except suits or proceedings for collection or assessments of taxes on agricultural products, to be conducted in his name; but the person who commenced the suit shall pay all attorney's fees and expenses thereof, and receive the commissions, if any.

" 'But all power and authority of the state revenue agent and his predecessors in office, to institute or prosecute any suit, appeal or proceeding to assess for taxation, or to collect taxes on agricultural products from or against the owners thereof, are hereby revoked and annulled, and all assessments for back taxes on agricultural products and all suits, appeals and proceedings of every kind to assess for back taxes or to collect back taxes on agricultural products heretofore begun or instituted or now pending shall abate from and after this date, and shall be dismissed.'

"Sec. 2. That this act be in effect and force from and after its passage.

"Approved March 21, 1916."

Thereafter, on April 24, 1916, during the regular term of the circuit court, appellant's appeal from the order of the board of supervisors was, by the court on its own motion and in pursuance of said act, dismissed. From the judgment of the circuit court dismissing the appeal and abating the suit appellant prosecutes this appeal, and thereby presents for the decision of this court the constitutionality of said Senate Bill No. 310.

*Tim E. Cooper* and *A. H. Longino,* for appellant.

*Catchings & Catchings, McLaurin & Arminstead, Brunini Hirsch & ·Griffeth Hirsch, Denton Landau, Watkins & Watkins* and *Gwin & Mounger,* for appellees.

STEVENS, J., delivered the opinion of the court.

(After stating the facts as above). Counsel leading the attack upon the constitutionality of Senate Bill No. 310 direct our attention to and rely upon the following sections of our Constitution, which they contend, are violated by the act in question, viz.: Sections 112, 87, 90 (h and o), 66, and 100. In presenting the case, they argue these several sections of the Constitution more collectively than separately, frankly conceding, however, "that it devolves upon the appellant here to put his hands upon the provisions of the Constitution which prohibit the exercise by the legislature of the power to pass the statute." ·

It must equally be conceded that in our form of government the power to legislate is vested in the legislature, and that, before the court can strike down the act in question as unconstitutional, we must put our hands upon the exact provision of the Constitution which denies to the legislature the power here exercised, and not only to point out the provision or provisions that are violated, but to hold beyond a reasonable doubt that the act in question conflicts with such provisions of our organic law. It is an elementary principle frequently announced by our court that the members of the legislature are the immediate representatives of the people, and that the expression of the legislative will by statute must be regarded as the expression of the will of the people in their sovereign capacity; and before the courts can interfere the will of the people as expressed in their law must necessarily conflict with their will as heretofore expressed in their Constitution.

If there is any doubt about the constitutionality of the act in question, such doubt must be resolved in favor of the law. Our court has likewise frequently called attention to the fact that it has nothing to do with the wisdom or expediency of a statute. What, then, is the purpose and effect of the amendatory act in question? After full consideration of the oral arguments and the able briefs on file, we are forced to conclude that the statute here attacked violates neither the spirit nor the letter of any of the provisions of the Constitution relied upon.

In construing the act we are justified in looking to and considering its title. It amends the Code section providing for the delivery by the outgoing revenue agent of all documents that will be of service to his successor, requires the successor to allow all suits commenced by the outgoing officer to be conducted in the name of the successor, "except suits or proceedings for the collection or assessment of taxes on agricultural products," and expressly abates such assessments, suits, and appeals as the revenue agent has instituted against or in reference to agricultural products. The act deals with the power and authority of the revenue agent as a fiscal officer of the state. It does not abate, and does not undertake to abate, any fixed liability of any person, firm or corporation for past-due taxes. The office of state revenue agent is a legislative and not a constitutional office. The legislature has the unquestioned right at any time to prescribe the duties of this officer or to curtail his power. Indeed, it may abolish the office altogether. It may here be stated also that an office is not a contract, and that the incumbent has no vested interest in the term, fees, or emoluments thereof. We are not called upon to search for the motives that may have inspired the amendment to section 4750 of the Code. It is sufficient to say that the legislature in its wisdom, and presumably after maturest deliberation, deemed it wise to trim the power

of this officer a bit and to deny altogether the right
of the successor to allow his name to be used in the
prosecution of any proceedings for the assessment or
collection of taxes on agricultural products. Were we,
however, called upon to search for a reason, we might
be justified, we think, in saying that the power of an
out-going officer to prosecute such proceedings armed
this official with unusual power; that in the exercise
of this power the revenue agent had frequently insti-
tuted blanket assessments against millions of dollars
worth of property, taxes upon which were being claimed
for many years past, and covering transactions about
which records might be destroyed and memory failing.
They may have concluded that the exercise of this
power would lead to unauthorized and unjust assess-
ments upon agricultural products, and especially upon
such a product as cotton, which may or may not reach
the mills the same year it is produced, the ownership of
which so frequently changes from producer to merchant,
from merchant to cotton buyer or banks, and from these
in turn to the larger holders and manufacturers. Be
this as it may, we cannot impute to the legislature
either a desire or design to extend any exemption to
one justly indebted to the state for past-due revenues,
and there is here no attempt to pass a special or local
law for the benefit of any individual or corporation.
So far, therefore, as section 87 of the Constitution is
concerned, this is a general law. There is no merit
also in the contention that the statute exempts property
from taxation, levy, or sale, or is intended to create,
increase, or decrease the fees, salary, or emoluments
of any public officer, and therefore it does not violate
any of the provisions of section 90.

The only serious question presented by this appeal
is whether the statute violates section 100 of the Consti-
tution. If the necessary effect of the statute was to
remit, release, postpone, or diminish the fixed liability
or obligation of any taxpayer, then the statute would

violate this section of our fundamental law. As we interpret the statute, however, the amendment does not undertake or purport to remit, release, postpone, or diminish the obligation or liability of any person. It does not undertake to declare that those who owe past-due taxes upon agricultural products are or shall ever be freed from such liability. In construing the act we must look to the act as a whole, and not hang upon a single word therein. The essential part about the amendment is the provision that "all power and authority of the state revenue agent and his predecessor in office" to prosecute the appeal here presented is revoked and annulled, and the assessment on the cotton in this case, having been instituted not by the assessor or the sheriff but by the revenue agent himself, stands abated. In standing abated the liability, if any, has never become fixed. The act itself is not susceptible to the construction which counsel for appellant attempt to place upon it. It does not purport to deal with those assessments which under our revenue system or by operation of law have become fixed liabilities against any of the taxpayers of our state. The statute simply declares that the revenue agent shall no longer have the power himself to institute back assessments on agricultural products in Mississippi. It was not incumbent upon the legislature in the first instance ever to have reposed this power in him. Having once reposed the power, the legislature, expressing the state's will, now has the undoubted right to revoke it. The revocation of this power is the only complaint which appellant is in position to question. The act as amended having revoked his power to prosecute this kind of an appeal before the circuit court of Warren county, and having abated the very assessment which he as revenue agent had instituted, the circuit court was left without jurisdiction to render a final judgment, and the action was therefore properly dismissed. The judgment of the circuit court abating the assessment and dismissing

the proceeding of course neither imposes nor discharges any liability, and does not and will not stand in the way of the assessor in any attempt by him to back-assess appellees upon any agricultural products that might have escaped taxation and upon which appellee should pay taxes. The authorities fully sustain the right of the legislature to direct or authorize a re-assessment or to validate an erroneous assessment, but no such question is even presented in this case. The cases cited by counsel for appellees fully sustain the views here expressed, and especially the following: *Colbert* v. *State,* 86 Miss. 769, 39 So. 65; *O. C. French et al.* v. *State,* 53 Miss. 651; *Kendall* v. *City of Canton,* 53 Miss. 526; *Hyde* v. *State,* 52 Miss. 665; *Bradstreet Company* v. *Jackson,* 81 Miss. 236, 32 So. 999; *State* v. *Order of Elks,* 69 Miss. 895, 13 So. 255; *State* v. *Hill,* 70 Miss. 106, 11 So. 789; *Crow* v. *Cartledge,* 99 Miss. 281, 54 So. 947, Ann. Cas. 1913E, 470.

*Affirmed.*


Cook, P. J. (dissenting). I am convinced, beyond all reasonable doubt, that the legislature intended by Senate Bill No. 310 to release the state's claim for taxes due by appellee and all others similarly situated. The title of the act throws a flood of light upon the purpose of the act.

It was certainly the duty of appellee to list his property for taxation, and it was certainly the duty of the assessor to assess the property so listed and to make the assessment whether it was listed or not, and it was the duty of the collector to collect the taxes so assessed. If it was the duty or obligation of appellee to list his property for taxation, he was liable for the taxes thereon, and the state was the owner of the obligation, or liability.

The legislature knew what it wanted, but, confronted with section 100 of the Constitution, it became necessary, if possible, to so frame the expression of its pur-

pose as to satisfy this constitutional limitation of its powers.

The necessary effect of the statute is to remit and cancel the claim of the state for the taxes due the state; it effectually relieves the taxpayer from all liability to the state. This is so clear to me that I am unable to see how any other conclusion can be reached. It may be good policy to abate liabilities of this kind and to exempt agricultural products from taxation, but, when this is done in total disregard of the Constitution, I cannot give my assent without violating my oath of office, as I understand it.

Again, it is my opinion that the act in question violates section 112 of the Constitution. Taxation and the collection of unpaid and unassessed taxes must be by uniform rules. To exempt one class of delinquents from the rule which empowers the revenue agent to proceed against delinquents simply destroys the uniformity of the rule. This act favors one class of delinquents and forbids the revenue agent from instituting proceedings against the favored class, but leaves the revenue agent free to proceed against all other delinquents. All taxpayers, except the statutory elect, must submit to the activities of the revenue agent.

It may be within the power of the legislature to exempt from taxation all agricultural products grown in the state, but when the legislature in express terms changes one of the uniform rules provided by general law for the taxation of property by exempting therefrom the owners of a certain class of taxable property, there can be no reasonable doubt that section 112 was ignored. So we have the desired result accomplished by indirection when it could not be accomplished directly.

The taxes were due and unpaid and were a liability owned by the state. The revenue agent had instituted proceedings to collect this liability, when the legislature steps in and abates these proceedings, and thereby takes from the state its own, and at the same time sets

up a new and different rule for the collection of the cotton tax. All other taxpayers may be assessed by the revenue agent for delinquent taxes, but by a special dispensation the favored taxpayer who has managed to escape from the regular assessing authorities is rewarded by forever exempting him from the possibility of being bothered by the revenue agent again.

I can imagine no more effective scheme to repeal the constitutional limitations upon the legislature than the one devised in this case and approved by the court.