TUCKER PRINTING CO. *v.* BOARD OF SUP'RS OF ATTALA COUNTY.

(Division B. Dec. 17, 1934. Suggestion of Error Overruled Jan. 14, 1935.)

[158 So. 336. No. 31492.]

Ralph L. Landrum, of Kosciusko, for appellant.

J. D. Guyton, of Kosciusko, for appellee.

Argued orally by **Ralph L. Landrum,** for appellant, and by **J. D. Guyton,** for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant filed its petition in the circuit court of Attala county against appellee praying for a writ of mandamus to compel appellee to issue and sell the bonds of the county in a sufficient amount to pay an outstanding county warrant for the sum of three hundred forty-two dollars and forty-three cents, held by appellant and issued against the game and fish fund of the county, being for necessary supplies furnished the county by appellant and used in the administration of the game and fish statute. The court rendered a judgment refusing to order the writ of mandamus. From that judgment, appellant prosecutes this appeal.

During the months of July and October, 1930, the sheriff's office of Attala county was supplied by appellant with certain printed license blanks and other printed matter and equipment necessary to be used in carrying out and administering the game and fish statute—chapter 178, Laws 1926; chapter 115, sections 4705-4763, inclusive, Code 1930. At the July, 1931, meeting, the board of supervisors allowed appellant's claim for three hundred forty-two dollars and forty-three cents and issued a warrant therefor. The order allowing the warrant recites that it covers supplies for the sheriff's office, "namely, hunting license and copies of the law that applies thereto. The law provides that this shall be paid out of the Game & Fish Fund authorized by Laws 1926, chapter 178, section 15 [Code 1930, section 4761]. It is therefore the order that the clerk hereof draw a warrant on the Game & Fish Fund in the amount of three hundred forty-two dollars and forty-three cents in favor of Tucker Printing House." There are other recitals in the order not material to the questions to be decided. The warrant was issued and delivered to appellant in accordance with the order.

At the December term of the board of supervisors, appellant filed its petition requesting that the board either pay the warrant or issue and sell bonds for that purpose, as provided by section 5977, Code 1930. The board declined to do either. When the warrant was issued, there was nothing in the game and fish fund in the county treasury with which to pay it, and there has not been anything since.

By chapter 123, Laws 1932, the entire game and fish chapter in the Code of 1930, except one section, was repealed, the section left standing being section 4751, dealing with federal power over "migratory bird refuges." The repealing statute made no provision for the payment of outstanding warrants issued on the game and fish fund.

Appellant contends that section 5977, Code 1930, applies and takes care of the unpaid outstanding warrants against this particular fund. That section provides that every municipality and every county which has or may hereafter have legal and undisputed warrants or other obligations, and insufficient funds in the treasury to pay them or any of them, is empowered and required to at once prepare for, and take up such warrants and other obligations, and for that purpose issue and sell serial bonds, as provided by law for the issuance of bonds for the payment of outstanding obligations, the bonds to pay such outstanding obligations shall be issued regardless of the amount thereof, and no election shall be held on the question of the issuance of the bonds, but the issuance thereof is made mandatory.

Appellee contends that the warrant was issued in violation of section 5979 of the Code, because there were no funds in the treasury with which to pay it. That section provides that no warrant shall be issued or indebtedness incurred by a county or municipality unless there is sufficient money in the particular fund from which the

allowance is or must be made to pay such warrant, or unless the indebtedness is authorized by a majority of the qualified electors of the county or municipality. The other provisions of the section are not pertinent here.

Does the warrant held by appellant represent an indebtedness of the county? Is it an undisputed outstanding warrant of the county? For a long time prior to the enactment of chapter 123, Laws 1932, certainly as far back as the Code of 1892, the boards of supervisors were given jurisdiction over the taking of game and fish in their respective counties. In Ex parte Fritz, 86 Miss. 210, 38 So. 722, 109 Am. St. Rep. 700, the court held that fish were incapable of absolute ownership until actually taken, except in artificial lakes or small ponds that were entirely landlocked; that in all running streams and lakes with outlets into other waters the right of the state to regulate the time, manner, and extent of the taking of fish is unquestioned; that by reason of their migratory habits their ownership was in the public and no individual had any absolute property or right in them until they had been subjected to control; that it was the right of the state, as well as its absolute duty, to preserve for the benefit of the general public the fish in its waters, in their migrations and in their breeding places, from destruction or undue reduction in numbers through improvidence or greed. Of course, what was said in that case with reference to fish applies with equal force to game.

It is true, as contended by appellee, that the game and fish statute itself expressly provided the means and the exclusive means, while the statute was in force, of raising funds for its administration. Those means consisted of license fees to be paid by fishermen, trappers, and hunters, but they were wholly inadequate, the license fees were insufficient. And now, since the repeal of the statute, the only resort for payment, if there be any,

is by the issuance and sale of bonds under section 5977 of the Code. Under the Fritz case, appellant's claim is a county obligation, although payable out of a certain named fund. It is argued by appellee that the repeal of the statute abrogated that obligation and left no means by which it could be discharged. In other words, the Legislature by the repealing act repudiated the debt. Under the provision of the Federal Constitution (article 1, section 10) prohibiting the states from passing any laws impairing the obligation of contracts, and under section 16 of our Constitution which has the same inhibition against such legislation, the repealing act would impair the obligation of the contract, and therefore would be void to that extent. The obligation of a contract, in the meaning of these constitutional provisions, depends on the law in existence when the contract was made. By the obligation of a contract is meant the law under which the contract was made as well as all the remedies for its enforcement, or after provided remedies equally adequate. Legislation of a state impairing the obligation of a contract made under its authority is void, and the courts, in enforcing the contract, will pursue the same course and apply the same remedies as though such void legislation had never existed. The law in force at the time the contract was made forms a part of it, and is written into the contract as much as if expressly incorporated therein. Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793; Ennis Waterworks v. Ennis, 233 U. S. 652, 34 S. Ct. 767, 58 L. Ed. 1139; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606; Louisiana ex rel. Southern Banks v. Pilsbury, 105 U. S. 278, 26 L. Ed. 1090; White v. Hart, 13 Wall. 646, 20 L. Ed. 685; Gunn v. Barry, 15 Wall. 610, 21 L. Ed. 212; In re Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. Ed. 216; Selover, Bates & Co. v. Walsh, 226 U. S. 112, 33 S. Ct. 69, 57 L. Ed. 146; Murray v. Charleston, 96 U. S. 432, 24 L. Ed. 760; Von Hoffman v. Quincy, 4 Wall.

535, 18 L. Ed. 403; McCracken v. Hayward, 2 How. 608, 11 L. Ed. 397; Price v. Harley, 142 Miss. 584, 107 So. 673.

If, under those constitutional provisions, the repealing statute should be held to be void, appellant would have the right by mandamus to so treat it and have reinstated in that county the game and fish statute and proceed with its administration until appellant's, and other, claims of the same character are paid. A statute, however, will not be held to be unconstitutional unless there is no other reasonable escape therefrom. The courts of this state and of every jurisdiction in this country, we believe, have held that every reasonable doubt should be resolved in favor of the constitutionality of a statute. 12 C. J., sec. 222, p. 794. The decisions of our court so holding are so numerous that we deem it unnecessary to set them out and only refer to where they may be found—Mississippi-Southern Digest under the topic Constitutional Law, Sec. 48.

In our judgment there is an escape, and reasonable one, from holding the repealing statute unconstitutional. In the first place, the presumption should be indulged that the Legislature did not intend to do the dishonest thing of repudiating the indebtedness. It certainly did not do so in so many words. Construing the game and fish statute, especially section 4761, and sections 5977 and 5979 together, we think appellant's warrant was an outstanding undisputed obligation of the county; that the board of supervisors had the right, and it was its duty, to buy the supplies from appellant and issue the warrant therefor whether the funds were in the treasury or not. The game and fish statute could not be put in force, and could not be administered without the initial purchase of the necessary supplies furnished by appellant. They consisted of printed license forms to be filled out and held by each licensee, and printed copies of the game and fish statute also to be furnished each licensee,

as well as other printed matter. Licenses could not be issued, and no license fees collected until this was done, therefore there could be no money in the treasury to the credit of this fund until this initial obligation had been incurred. It was made mandatory on the county to incur this obligation whether the funds were in the treasury or not. The county had no option as to this matter. Section 5979 has no application to such an obligation, as was held in Choctaw County v. Tennison, 161 Miss. 66, 134 So. 900, 902. Sections 5977 and 5979 were under consideration in that case. The court held that section 5979 had no application to outstanding obligations incurred by the county, where there were no funds in the treasury to pay such obligations, when they were incurred for courthouse expenses, salaries of officers, expenses of roads and bridges in emergencies, and other debts made mandatory by statute. In discussing the question, the court used this language:

"We must hold that section 3974 is not controlled by section 5979. If it were otherwise, not only would section 3974 practically disappear, but there would be occasions when, by reason of the limitations of human foresight, counties would be powerless, for a disastrous space of time, to perform the imperative duties and to render the essential service which was and is the purpose of their organization and existence.

"All these three sections stand together, work together, and in their work each operates in its own particular place or station. Under the facts as shown by this record, a large part of the indebtedness for which this bond issue is proposed is to discharge obligations resulting by operation of law and which the board of supervisors has no rightful power to abrogate or suspend, and the others, as covered by the agreement between the parties, were on account of emergencies. The result there-

fore must be that the proposed bond issue is valid, and it will be so ordered.''

We do not think it an unreasonable construction of these statutes to hold that when the Legislature repealed the game and fish statute, it intended to give appellant and others likewise situated the benefit of section 5977. If appellee's construction of section 5979 be correct, section 5977 could never come into play. In other words, if former section is universal in its application, the latter would be utterly useless, in effect, would prohibit that which the other expressly authorized, both could not stand together. No such construction will be given, unless inescapable.

Reversed and judgment here for appellant.