QUINN *v.* CITY OF McCOMB.

Division A.   Dec. 3, 1951.

No. 38072 (55 So. (2d) 479)

Morse & Morse, and **Roach** & **Jones,** for appellants.

Cassidy, McLean & Alford, for appellees.

734

**Lee, J.**

J. N. Quinn and Herman S. May, by their bill, sought to enjoin the City of McComb, Mississippi, from setting up additional housing units. From the dismissal of their bill, following a hearing, they appeal.

The Legislature, by Chapter 338, Laws of 1938, Section 7295 et seq., Code of 1942, enacted what is known as the "Housing Authorities Act." It was therein declared that providing safe and sanitary dwelling accommodations for persons of low income is a public use and purpose, for which public money may be spent and private property acquired, and is a governmental function of State concern. The Act created in each city a public body, corporate and politic, to be known as the Housing Authority.

On May 3, 1938, the Council of McComb City, then acting under the commission form of government, adopted a resolution, in conformity with the Housing Act, supra, declaring the need for a Housing Authority in the city, and set up the same. Thereafter, land of the value of $47,130 was utilized, and between 1940 and 1950, 393

unit houses were built, and the tax on the land at the then levy of 38 mills would have amounted to $1,790.94 annually. Actually, from 1942 to 1947, inclusive, in addition to a deed to four lots, the City received from the Housing Authority $10,545.69 in lieu of taxes.

In 1946, the City abandoned the commission form of government and reverted to its special charter.

During the latter part of 1949 and the early part of 1950, negotiations were undertaken to provide additional units to the existing ones then being operated by the McComb Housing Authority. At this juncture a petition, presumably initiated under Section 3769 et seq., Code of 1942, and containing the requisite number of qualified electors, was filed with the city board, praying for an election to determine whether or not the proposed extension should be carried out. However, the board did not call the election; and no petition was filed with the Governor, as provided by Section 3778, Code of 1942.

In their bill of complaint, the appellants alleged that they were signers of the petition for the election. However, they did not prosecute an appeal to the circuit court under Section 1195, Code of 1942.

In his oral opinion, the chancellor observed that resort was had neither to Section 3778, supra, nor to Section 1195, supra. The decree, however, adjudged that the appellants failed to prove any grounds for equitable relief.

Appellants assign and argue several propositions to which response is deemed necessary.

(1) The first contention is that the original resolution of May 3, 1938, was not published, and, on that account, it was invalid.

It is true that Section 3806, Code of 1942, provides that resolutions or ordinances passed by the council, except in certain cases not necessary to mention here, shall be published. But by Section 7319, Code of 1942, when there is exercise of power to set up the Housing Authority, it is provided: "Such a resolution or resolu-

tions shall take effect immediately and need not be laid over or published or posted." ▆▆ By the terms of the Act, each city in the State is included, whether acting under the commission form, under special charter, or under the code chapter. " 'City' shall mean any city in this state. * * *" Paragraph (b), Section 7295, Code of 1942. " 'Governing body' shall mean, in the case of a city, the board of aldermen, commissioners, or council; * * *." Paragraph (d), Section 7295, supra, Besides "In so far as the provisions of this Act are inconsistent with the provisions of any other law, the provisions of this Act shall be controlling." Section 7322, Code of 1942. Consequently this assignment is untenable.

(2) But appellants contend that, on the return to its special charter, the City was without power to set up a Housing Authority, in the absence of a provision to that effect in its charter.

What has been said in response to Point 1, supra, is also applicable to this proposition, and likewise disposes of it. The Act does not exclude municipalities operating under special charter. Section 88 of the Constitution is no obstacle, because in McClure v. City of Natchez, 151 Miss. 718, 118 So. 616, and the authorities there cited, it was held that the Legislature may amend the charters of municipalities, operating under special charters, by a general law applying to all municipalities.

(3) Appellants also contend that, in the steps undertaking to create additional units, there was no finding that unsanitary and unsafe dwelling accommodations existed, or that there was a shortage of dwelling accommodations, in the city, and, for that reason, the acts of the City and the Housing Authority were unauthorized and void.

▆▆ In the original resolution, it was adjudicated (a) that unsanitary, unsafe dwelling accommodations exist and (b) that there is a shortage of safe and sanitary dwelling accommodations, available to families of low

income at rentals they can afford. Under Section 7297, supra, the governing body was authorized to adopt a resolution declaring the need for a Housing Authority, if it should find either of the above conditions to exist. When the need has been declared, and the authority has been set up, there is no requirement in the Act that like adjudications shall be made from time to time thereafter as new units are constructed. As a matter of fact, however, the resolution with reference to additional units, while not following the exact language of the statute, did make a finding that ''there exists in the City of McComb City, Mississippi, a need for such low rent public housing at rents within the means of low income families * * *.'' Besides, Section 7300, Code of 1942, is also broad in its scope and effect. This contention must, therefore, be rejected.

(4) Appellants further contend that the cooperation agreement, a part of the proceedings, was null and void because the City thereby contracted away its police power, and abandoned its right to fix taxes for a period of sixty years.

The terms of the Housing Act provide: ''In each city * * * of the State there is hereby created a public body corporate and politic to be known as the 'housing authority' of the city * * *,'' and the method is provided for putting it into effect. Section 7297, supra. It has been shown, supra, that ''City'' means any city in the State. By the terms of Section 7313, Code of 1942, the property of a Housing Authority is declared to be public property, used for governmental purposes, and is exempt from all taxes and special assessments of the City; and in lieu of such taxes ''* * * an authority may agree to make payments to the city * * * for improvements, services and facilities furnished by such city, * * * for the benefit of a housing project, but in no event shall such payments exceed the amount last levied as the annual tax of such political subdivision

upon the property included in said project prior to the time of its acquisition by the authority.''

It is well-settled that the governing body of a municipality has such powers in regard to contracts as are conferred upon the municipality by its charter or the general laws. Mayor and Board of Aldermen of City of Natchez v. Engle, Miss., 51 So. (2d) 564, and authorities there cited.

It was pointed out in City of Indianola v. Sunflower County, 209 Miss. 116, 46 So. (2d) 81, that political subdivisions are not private corporations. In that case, it was held that, since a city derives its existence and powers by charter from the State, ''It can do and perform all acts for which it has authority thereunder, except such as may be in conflict with the Constitution.''

In Edwards House Company v. City of Jackson, 138 Miss. 644, 103 So. 428, it was said that the authority of a municipality is limited by the authority granted to it by the Legislature; and the contract in that case was voided because the City had no authority to enter into it.

The cooperation agreement involved here is in strict accord with Section 7313, supra. The city authorities had the power to enter into this agreement because they are expressly empowered so to do by the Housing Act. And, in Adams v. Kuykendall, 83 Miss. 571, 35 So. 830, it was held that the taxing power previously delegated to a municipality by a special charter can be controlled by the Legislature by subsequent act.

(5) Appellants contend that the Act in question is violative of several sections of the Constitution.

While Section 182 of the Constitution prohibits the surrender or abridgement of the power to tax corporations and their property, it has no reference to the property of public bodies, corporate and politic.

Neither does the Act contravene Section 112 of the Constitution, because the Housing Act, with reference to its taxation feature, is uniform and equal as regards the class of municipalities set out in the Act. And ob-

viously, Section 192 of the Constitution has no application whatever.

The many pronouncements by this Court require that a statute be construed so as to render it valid, if possible; and that its unconstitutionality should appear beyond a reasonable doubt, before it will be held invalid; and that it will be construed in harmony with the Constitution, if reasonably possible. Some of these cases are: Natchez & S. R. Company v. Crawford, 99 Miss. 697, 55 So. 596; Richards v. City Lumber Company, 101 Miss. 678, 57 So. 977; Easterling Lumber Company v. Pierce, 106 Miss. 672, 64 So. 461, Id., 235 U. S. 380, 35 S. Ct. 133, 59 L. Ed. 279; Darnell v. Johnston, 109 Miss. 570, 68 So. 780; Staple Cotton Co-op. Ass'n v. Hemphill, 142 Miss. 298, 107 So. 24; Thompson v. Box, 147 Miss. 1, 112 So. 597; Johnston v. Reeves & Company, 112 Miss. 227, 72 So. 925; Marshall v. Grimes, 41 Miss. 27; Miller v. Sherrard, 157 Miss. 124, 126 So. 903, 906; Sandford v. Dixie Construction Company, 157 Miss. 626, 128 So. 887; State ex rel. Attorney General v. School Board of Quitman County, 181 Miss. 818, 181 So. 313; Chassanoil v. City of Greenwood, 166 Miss. 848, 148 So. 781; 291 U. S. 584, 54 S. Ct. 541, 78 L. Ed. 1004; 292 U. S. 601, 54 S. Ct. 627, 78 L. Ed. 1464; Tucker Printing Company v. Board of Supervisors of Attala County, 171 Miss. 608, 158 So. 336.

The courts of many of the states of the union have upheld the constitutionality and validity of the Housing Acts, after which Chapter 338, supra, is fashioned, and have declared the property of such Housing Authorities exempt from ad valorem taxes.

As to the constitutionality and validity of state and municipal housing laws, see extended note in 130 A. L. R. 1073.

As to exemption of property of housing authorities from taxation, see City of Cleveland v. U. S., 323 U. S. 329, 65 S. Ct. 280, 89 L. Ed. 274. See also annotations in 133 A. L. R. 365, and 152 A. L. R. 239.

It appears that there was ample statutory authority for the City of McComb to do what it did in this housing project, and that the requirements of the law have been followed with precision.

Affirmed.