STATE *ex rel.* ATTY. GEN. *v.* BOARD OF SUP'RS OF STONE
COUNTY.

[95 South. 683.   En Banc.   No. 23269.]

COUNTIES. *Law restricting imposition of taxation, if items of budget be petitioned against, held void as violating constitutional provision for county supervisors.*

Section 6, chapter 225, Acts 1922, is void as violating section 170 of the Constitution, providing for county supervisors, in that it authorizes taxpayers by petition to abolish compensation to constitutional officers, thereby impairing or destroying efficient constitutional functioning in the administration of the governmental affairs of the county.

APPEAL from circuit court of Stone county.

HON. D. M. GRAHAM, Judge.

Original mandamus by the state, on the relation of the attorney-general, against the board of supervisors of Stone county, to compel defendants to budget and make provision for the expenditure for tick eradication work. From a judgment sustaining a demurrer to the petition and dismissing the cause, plaintiff appeals. Reversed and remanded.

*M. D. Brown,* for appellants.

A close study of chapter 225, Acts of 1922, carries conviction that it is a good piece of legislation, and with section six thereof properly construed, or if necessary to preserve the balance of the statute, declared in conflict with the tick eradication laws of the state, and therefore void. It seems that section six of this statute is the veritable joker that creeps into statutes, and that the vigilant, not to say crafty, anti-tick members of the legislature slipped one over on the author of this legislation, hoping thereby to accomplish indirectly what could not be accomplished

directly. A pretty nice ruse, but the author of section six might have known, and perhaps did know that the life of his joker, was only to the time when it' reached the supreme court. It cannot be contended seriously, and hardly in good faith to this court, that all of the beneficial tick eradication laws of Mississippi were repealed by this section six by implication. With the item of tick eradication, in this case, expunged from the budget, as has been done by the board of supervisors, appellees, tick eradication must end, as the work cannot be carried on without money to pay for it. The principle of the law of repeal of statutes by implication, is so elementary, and has so often and so many times been reiterated by this court, that a citation of the many cases, would be a work of supererogation.

Chapter 225 of the Acts of 1922, without section six thereof eliminated, will still be valuable legislation, on the principle, that where a part of a statute is valid, and a part void, if the bad or void part can be stricken from the good or valid part, this will be done by the court. Section six is a complete and separate section and part of the whole statute can be stricken without marring the rest of the statute, leaving a very good Budget Law intact, good enough at least to get by on until January, 1924, when the legislature again meets, and if they think section six thereof, should be re-enacted into the Budget Law, properly amplified as to its meaning, then this can be done also. So with this I believe I will conclude my brief, leaving the other phase of it, that is that the entire statute is void, for the presentation by my very able associates.

*W. C. Batson,* for appellee.

I will answer the entire brief for appellant by Hon. M. D. Brown as follows: A valid statute, the language of which is plain, must be enforced in accordance with its language, regardless of attendant evil. *State* v. *Henry,* 87 Miss. 125, 40 So. 152.

Appellant charges that section 6 of chapter 225 of the Laws of 1922, known as the budget law is unconstitutional and void because in conflict with sections 103, 135, 170 and 261 of the Constitution of the state of Mississippi. If this section 6 is unconstitutional and void, then with it will go section 7; and when that is done, the whole act will go, because there is no saving clause; whatever of the statute could then remain, would amount only to a moral lecture which result certainly was not the intention of the legislature. Our very constitution itself counsels economy in the matter of our government expenditures when it does not specifically limit them. It is not possible to determine the validity of section six of this act without looking to the construction of the entire chapter 225, Laws 1922. The legislature passed this act in response to the universal demand of the people for more rigid economy in the matter of governmental expenditures. And by a careful reading of the whole act we can easily determine that it was the purpose of the legislature to more effectively limit boards of supervisors in their expenditures in the matter of which said boards have exclusive jurisdiction and does not intend to affect fixed and lawful expenditures, even though made by such boards, that have already been determined by the Constitution and statutes thereunder. In other words it is clear that the act should apply only to matters in the strict discretion of said boards and in which it is their duty to make allowances for payments of obligations incurred by themselves and not otherwise. It is contended that this act conflicts with sections 158 and 261 of the Constitution. All allowances made under these sections are made by the respective courts and the board of supervisors is only the agency for paying the claims. These are cases in which the said board have no discretion at all. Likewise the same argument applies to section 103 of the Constitution and I cannot see where this act conflicts therewith.

It is contended this act conflicts with section 135 of the Constitution. None of the officers provided for in said section draw their pay directly from the board of supervisors except the county treasurer. Each and every officer provided in said section receives his compensation either by fees collected himself or receives his pay from the state treasury except the county treasurer whose compensation is fixed by statute and is a matter in which the board of supervisors have no discretion. The treasurer's salary is not fixed by the Constitution but is fixed by statute and. if there is any conflict it is a statutory conflict, a question not now before the court.

The only other section of the Constitution urged as being in conflict with the act in question is section 170 of the Constitution which provides for the election of the members of the boards of supervisors. There is nothing in this section limiting or restricting the compensation of the said members of boards of supervisors but leaves the matter entirely with the legislature. Again if there is a conflict it is statutory and not constitutional.

Therefore it is apparent that not a single constitutional office, official, or court, is eliminated by the said Budget Law but on the other hand if there be a conflict it is statutory which this court would have to determine in another proceeding. And if this new statute takes away no constitutional right, then there is no conflict and, too, appellant admits there is none so far as the particular proposition before the court is concerned but base their argument on what might happen or is within the possibility of happening.

If this court should arrive at the conclusion that this Budget Law in some particular might ever be used in such a manner as to affect the constitutional right of any one, official or other person, then I say that would not vitiate the entire act or all of section 6 even though appellant urges that if the particular words cannot be stricken out and leave a complete workable act, it would all have to

go. They cite a case, that is *Cella Commission Co.* v. *A. Bohlinger,* 8 L. R. A. (N. S.) 537, but the rule adopted in this case is not that followed in all or even a majority of the decisions on this point. R. C. L., page 122, and citations under footnote 7.

The contention of appellee in this case is that a right interpretation of the Budget Law will limit its effects to matters in which the boards of supervisors have exclusive jurisdiction in the way of raising and expenditure of revenue, and a reading of the whole act convinces us that that was the intention of the legislature. Then to determine its constitutionality the rule is where there is a possibility of two interpretations one of which would be constitutional and the other unconstitutional or where there is any doubt, then the court should resolve the doubt in favor of the constitutional interpretation. *State* v. *Edwards,* 93 Miss. 704; *Campbell* v. *Union Bank,* 6 H. 625; *Newsom* v. *Cocke,* 44 Miss. 352; *Adams* v. *Capital State Bank,* 6 H. 625; *Adams* v. *Capital State Bank,* 74 Miss. 307; *Ratliff* v. *Beale,* 74 Miss. 247; *Hart* v. *State,* 87 Miss. 171; *State* v. *Henry,* 87 Miss. 125; *Natchez, etc., R. Co.* v. *Crawford,* 55 So. 596.

Concluding appellee contends that the lower court should be sustained because the demurrer was sustained as a whole and the case can be disposed of without resorting to the determination of the constitutional question as no good purpose could be accomplished by a reversal. And that a right interpretation of the intention of the legislature in passing this act will confine it to those matters in which boards of supervisors have the right to discretion, and this act was passed to prevent a further abuse of this discretion in the matter of wasteful expenditure of the public funds, and with such interpretation there is certainly no conflict with the Constitution for the rights of no office, official or other person are abridged or taken away.

We therefore urge that the decision of the lower court be sustained.

HOLDEN, J., delivered the opinion of the court.

This is a mandamus suit brought by the state to compel the board of supervisors of Stone county to budget and make provision for the expenditure for tick eradication work in that county for the next year, under the Budget Law (chapter 225, Acts of 1922). From a judgment sustaining a demurrer to the petition and dismissing the cause, this appeal is prosecuted by the state.

The appeal presents for our consideration the construction and validity of the Budget Law (chapter 225, Acts of 1922), and especially section 6 of the act, which is challenged by the state as unconstitutional and void.

The Budget Law provides, among other things, that the board of supervisors shall at their September meeting prepare a budget of county expenses estimated for the next year. The budget so prepared with the itemized statement of the estimated expenses for the coming year shall be published in the county paper. It is required that the statement be in such form as to show all estimates for the different expenditures for county purposes for the coming year.

Section 6 of the act provides that, when a majority of the qualified resident taxpayers of the county petition against any of the budget items proposed to be expended for such county, "it shall be unlawful to impose any taxation based on such items thus petitioned against, other than taxes for payment of interest or installments on bonds, unless the question shall be first submitted and favorably voted upon at an election to be held for that purpose."

In the case before us a majority of the qualified resident property taxpayers petitioned the board of supervisors against providing in the budget the item of expenditure for carrying on tick eradication work in the county; said item of expense being six thousand four hundred dollars. The board, complying with the petition, under the Budget Law, struck the listed item of expense for tick eradication from the budget, whereupon this mandamus proceeding was

instituted by the attorney-general to compel the board to budget and make provision for the expense of the tick eradication work.

The state contends that section 6 of the act is unconstitutional and void for several reasons; but we shall consider but one ground urged against its constitutionality, and that is that it contravenes section 170 of the Constitution of 1890, which provides for a board of supervisors with full jurisdiction over roads, ferries, and bridges, with other powers and duties enumerated therein.

The office of supervisor, it is contended, carries with it the right to reasonable compensation for services rendered by the occupant, and, if such compensation is denied the supervisors, it would result in the practical abolishment of the office, or so impair its functioning as to destroy its efficiency, and thereby nullify the office created by the Constitution.

Therefore it is urged that, if a majority of the taxpayers may by petition take away the compensation to be paid to supervisors, then it would, in effect, be to abolish the constitutional office of supervisor. It may be added also in this connection that the functioning of other constitutional offices in the county, such as county treasurer (since to be abolished), might be impaired or destroyed by a petition of the taxpayers against the allowance of compensation to those performing the duties of such offices. However, we shall rest the decision upon the constitutionality of the act with reference to the abolishment or impairment of the functioning of the office of supervisor as provided in section 170 of the Constitution.

We think section 6 of the act clearly violates section 170 of the Constitution, if not also other sections of the organic law. If a majority of the taxpayers may by petition compel the supervisors to strike from the budget an item of expenditure which goes to pay for the services of the constitutional officer, such as a county supervisor, then the power is delegated to the petitioners to abolish the office

by the indirect means of taking away the entire compensation, which would result in the office remaining vacant. This would not only be specifically contrary to the Constitution, but would be void as contravening, generally, the basic law, in that it would authorize the destruction of the governmental functioning of the county.

As we understand the Budget Act, all items of expenditure must be listed therein and published; and it must be apparent to all that there are many different items of expense necessary in the government of the county, such as the functioning of the courts, and other expenses paid as compensation to officers serving in the county.

The board of supervisors must not be hindered, and thus rendered inefficient, in its supervision, construction, and repair of the public roads, ferries, and bridges of the county. The administration of these important internal affairs of the county must be carried on under the provisions of the Constitution; and we think it was beyond the power of the legislature to enact a law giving a right to a majority of the property holders to interfere by petition with the constitutional functioning of the affairs of the county.

We have patiently endeavored to reach a construction of section 6 of the act that would uphold it as valid. We have tried to find a reasonable ground to hold that the legislature intended that only those items in the budget which were expenditures within the discretion of the board might be stricken from the budget by petition, and that all other expenses fixed by law could not be eliminated by petition, going upon the idea that to hold the legislature meant otherwise would be to charge it with an absurdity not intended; but we are unable to give the act such a construction, because its language is such that there is no room to interpret it in any other way than that the taxpayers may by petition prevent the expenditure for any item except "taxes for payment of interest or installments on bonds."

The express exclusion of this item of bonds necessarily implies the inclusion of all other items of expense listed in the budget. Therefore, where the language plainly gives the intent, there is no room for a construction at variance with the language.

Consequently we hold that section 6 of the act is void; and, since we believe the legislature would have enacted the other parts of the chapter without section 6, which appear to be valid, section 6 is separable from the other portions of the act, and we uphold the other parts as valid.

We think it will do no harm to point out that, under Laws 1916, chapter 167, state-wide tick eradication is made mandatory, and the work of tick eradication in the counties is required to be carried on and the expenses paid by the respective counties. The purpose of the law, which has already cost the taxpayers a great sum of money in the past several years, was to free our state from the fever tick and thereby benefit our stock and promote the stock industry to the extent of making it profitable, like it is in other states which are tick-free.

Now it cannot possibly escape the attention of the observer that, if this state-wide law is to be carried out and the state is to be freed of the tick, and thereby get a substantial benefit for the money and labor already expended, the law must be uniformly observed by all the counties infested with the tick; otherwise a single county, here and there may become infested with ticks, which will spread to adjoining counties, and in the course of time defeat the whole purpose of the tick eradication law.

The judgment of the lower court is reversed, and the cause remanded.

*Reversed and remanded.*

ETHRIDGE, J. (specially concurring). I concur in the views expressed by Judge HOLDEN that section 6, chapter 225, Laws of 1922, is in conflict with section 170 of the state Constitution, in so far as the section empowers the

taxpayers by petition and the voters by voting to prevent the imposition of taxes to pay the salaries of the board of supervisors and to suspend the operation of the general laws providing for taxation for the purpose of working roads, building bridges, etc.  I think, however, the statute is unconstitutional because it is an attempt to delegate legislative power to the people of the county or of a particular locality to suspend a general law or general laws contrary to the provisions of section 87 of the Constitution, and also because it violates section 33 of the Constitution, delegating the whole legislative power of the state to the legislature.

Chapter 167, Laws of 1916 (sections 5502 to 5506, Hemingway's Code), provides for state-wide cattle tick eradication, and that the expenses of conducting the eradication shall be paid out of the county treasury, etc.  Chapter 225, Laws of 1922, does not anywhere provide for the repeal of this law or of any other law, and provides no scheme of repeal which will take effect on the happening of a condition.

The entire matter of county finances is fixed in the general law of the state and embraces a large number of separate statutes providing for all kinds of public expenditures, among which are the expenses of the circuit and chancery courts, the salaries of many officers, the payment of debts, and the payment of many contracts which the county may be under duty to carry out.

Section 6, chapter 225, Laws of 1922, reads as follows:

"That the majority of the qualified resident property taxpayers of any county, town or village, may petition against any of items of proposed expenditure for such county or municipal purposes; and file such petition with the board of supervisors if it be a county proposition or with the board of aldermen of the town or village, if it be a municipal proposition; and after such petitions duly filed with such county or municipal authorities, it shall be unlawful to impose any taxation based on such items thus petitioned against, other than taxes for payment of

interest or installments on bonds, unless the question shall
be first submitted and favorably voted upon at an election
to be held for that purpose in such county or municipality,
provided, however, that this section shall not apply to con-
tingencies set forth in section five of this act."

It will be seen that this section confers upon the qual-
ified resident property owners the right to petition against
any of the items of expenditure of a county, and, when so
petitioned against, an election shall be held, and the vote
therein must expressly authorize the payment of the item
or items voted upon.  This places it within the power of
the majority of the resident taxpayers and the majority
of the qualified electors of the county to absolutely sus-
pend the operation of any law having to do with county
finances.  The expense of holding circuit and chancery
courts must be embraced in the budget, as must also all
of the salaries of the public officers payable out of the
county treasury, all witnesses and jurors and contractors,
as well as many other appropriations which the board of
supervisors may lawfully make under the general laws
are completely annulled and the law for the time being at
least is made inoperative within the confines of such coun-
ty.

In my opinion section 87 of the Constitution was de-
signed to prevent the suspension of general laws in favor
of individuals or corporations, or aggregations of such,
not representing the general public of the state.

When the legislature enacts a law statewide in its op-
eration and it goes into effect, it is beyond the power of
the legislature, and of course beyond the power of any other
body than the legislature, to suspend susch law so as to
except out of its operation favored individuals and com-
munities.  The legislature has power to enact a law and
to make it become effective upon the happening of a con-
dition, and this condition may depend upon the result of
an election, or it may enact a law repealing a law and make
the repealing law effective upon the happening of the con-

dition which may depend upon the election; but it can-
not delegate its power to make laws or repeal laws to the
people or any portion of the people. The power of the
legislature in this respect is clearly treated and fully dis-
cussed in the case of *Alcorn* v. *Hamer,* 38 Miss. 652. At
page 748 thereof the court said:

"The legislative, judicial, and executive powers of the
government of this state are vested in separate and distinct
departments. And each department is prohibited from
the exercise of powers pertaining to the others. The legis-
lative power of the state is vested in two distinct depart-
ments—the one styled 'the Senate;' the other 'the House
of Representatives;' and both together 'the legislature of
the state of Mississippi.' Constitution, article 2, section
4. The grant to this department is in general terms. It
vests it with the whole of the legislative power of the state.
No attempt is made in the Constitution to define the term
'legislative power;' and, unlike the Constitution of the
United States, it makes no attempt at a specific enumera-
tion of the items of legislative power.

"In determining, therefore, in a given case, upon the
legitimacy of the exercise of power by this department, we
must consider whether it be in its nature legislative; and,
if found to be legislative in its character, it must be held
to have passed under the general grant of legislative power,
unless in some other part of the Constitution is found a
prohibition or limitation express upon the exercise of the
power, or one clearly and plainly implied. And if, upon
looking at all the provisions of that instrument, no such
prohibition or limitation is there found, none exists. But,
as the powers of the legislature are delegated powers, it is
not to be doubted that any act passed by it which does not
fall fairly within the meaning and scope of legislative
power is as clearly void as if it were expressly prohibited.
And manifest reasons exist which render it quite as im-
perative upon the courts to refuse their sanction to such
an act as to one which violates an express provision of the

Constitution.  This species of violation is quite as much to be dreaded and guarded against as a direct attack upon any principle expressly recognized as a part of the fundamental law; for, as it has been very justly said: 'Attempts of the latter description to violate the Constitution will generally be met by instant reprobation, while the stealthy and frequently seductive character of the former is apt to escape detection, until the innovation is made manifest by the infliction of some startling wrong.'

"The legislative power, to whatever subjects it may be applied, and whatever may be its extent, is vested exclusively in the Senate and House of Representatives, by the people, in whom it resides.  They have, by the highest and most solemn of compacts, the Constitution, voluntarily relinquished their right to exercise it.  It can only be reclaimed by an abolition of an amendment of the Constitution, and the people are the only power competent to do either.  *To allow the legislature to associate with them in the exercise of the legislative functions another tribunal, or to cast back upon the people their delegated powers, would be tantamount to a subdivision of the Constitution, by changing the distribution of the powers of the government without the consent of the authority by which it was ordained.  The proposition that the legislature can surrender any portion of the authority with which it is vested, or authorize its exercise by any other body, or by the whole people of the state, is alike repugnant to the spirit and positive provisions of the Constitution.*  It is opposed to the express provisions of the Constitution, for the delegation of the legislative power to the senate and house of representatives is declared to be exclusive of the other departments, and is necessarily exclusive of every other person or body.  It is opposed to the spirit of the Constitution, which is intended for the equal protection of every party to the social compact, who is entitled to demand under its auspices, 'that his rights shall be protected, and that his civil conduct shall only be regulated by the associated wisdom, intelli-

gence, and integrity of the whole representation of the state.' And the inability of the legislature to delegate its powers, independent of those considerations, would arise from the principles which apply to every delegation of power requiring rectitude, discretion, and knowledge. Indeed, the proposition that the legislative power is incapable of being delegated by the department in which it has been deposited, either to the whole people or to any portion of them, is not denied by any one, and seems so clear that these observations might well have been dispensed with.

"Assuming then, as a proposition not to be disputed, that the legislative authority cannot be returned to the people, nor delegated to any other power, and that no act can be binding as a law, unless it has received its final sanction from the legislative will, we come to consider the grounds upon which it is alleged that the act in question is invalid."

(Italics mine.)

The court went to the utmost limit that it may go under the Constitution in upholding legislative acts which may become operative or be defeated by popular vote. Of course, under section 170 of the Constitution, giving the board of supervisors full jurisdiction over roads, ferries, and bridges, subject to legislative regulation, the legislature may confer many legislative functions upon the board of supervisors, but it has no right to leave to the popular vote the enactments or repeals of the statutes of the state.