CHOCTAW COUNTY *v.* TENNISON *et al.*

(Division B. May 25, 1931.)

[134 So. 900. No. 29520.]

**J. T. Crawley,** of Kosciusko, and **R. E. Nason,** of Ackerman, for appellant.

**E. M. Livingston,** of Louisville, for appellees.

**McClelland & Tubb,** of West Point, for appellees.

Frank A. Critz, of West Point, and B. H. Loving, of Columbus, amici curiae.

**Griffith, J.,** delivered the opinion of the court.

Section 5977, Code 1930, reads as follows: ''Every municipality and every county in this state which has or may hereafter have legal and undisputed outstanding warrants or other obligations, and insufficient funds in the treasury to pay them or any of them, is empowered and required to at once prepare for, and take up such warrants and other obligations from the proceeds of serial bonds which shall be issued for such purpose, as is provided by law for issuance of bonds for the payment of outstanding obligations. Such bonds to pay such outstanding obligations shall be issued regardless of the

amount thereof, and no election shall be held on the question of the issuance of such bonds for the payment of such obligations; but the prompt issuance of sufficient bonds to pay all of such legal and undisputed warrants or other obligations is made mandatory on such counties and municipalities.''

Acting under this section, the board of supervisors of Choctaw county, at its regular November, 1930, term, entered an order reciting and adjudging that the said county had at that time legal and undisputed outstanding warrants and other obligations in the aggregate amount of fifty thousand dollars, including the expenses of the instant bond issue, and that the funds of the county were insufficient to that extent or amount to pay said obligations, and further ordering a bond issue, without election, for the said sum out of which to pay said outstanding obligations. The record of the proceedings was duly certified to the state's bond attorney, and, the said officer having issued his opinion that the proposed issue was legal and valid, the matter was set for hearing before the chancellor for a validation decree in the manner as allowed by statute in such cases.

Appellees as taxpayers thereupon appeared and objected to the validation, and filed their written objections thereto, which objections, according to the course taken by the consequent litigation, were based upon section 5979, Code 1930. That section, so far as material to the questions now before us, reads as follows: "No warrant shall be issued or indebtedness incurred by any county or municipality unless there is sufficient money in the particular fund from which the allowance is or must be made, to pay such warrant or indebtedness. Provided, however, that such indebtedness may be incurred upon petition of a majority of the qualified electors of the county or municipality. Any such petition shall clearly state the exact amount of the indebtedness sought to be incurred and the definite purpose for which the expendi-

ture is to be made, and the original petition shall be entered together with the names of the signers, upon the minutes of the board of supervisors or municipal council.''

The facts which the objectors undertook to develop under said statute and under their said objections were that every warrant issued and every obligation outstanding, for which said bonds were proposed, was for an indebtedness incurred when there was insufficient money in the particular fund to pay said warrant or indebtedness. And, while the proof in support of that contention is not entirely clear, we shall assume for the purposes of this decision that the evidence was sufficient to show the facts, in the respect mentioned, to be as the objectors contend they were.

To the objections and to the facts aforesaid, appellant county replied that approximately one-fourth of the said obligations proposed to be paid were for court and courthouse expenses, officers' salaries and expenses, and many other items imposed by positive statute, and that the remainder of said amount was of obligations for roads and bridges, and arose out of an emergency, in respect to which, the county invoked section 3974, Code 1930, which is in the following words: ''In cases of emergency, whereby floods or storms have damaged, or destroyed bridges, schoolhouses, or injured courthouse or whereby epidemics, infectious diseases, or like conditions, unforeseen, said boards shall have power to borrow money, or contract debt to meet such emergency.''

There is an agreement in the record covering the said obligations for roads and bridges, which agreement is as follows: ''It is agreed by counsel for both sides that Choctaw county is operating under chapter 276, Laws 1920 and the amendments thereto. . . . It is further agreed that the purchases and accounts shown in this tabulation of road and bridge accounts were made and incurred in an emergency and under the provisions of

chapter 225, Laws 1922 as amended. . . . It is agreed by the objectors that the said contracts and obligations were incurred in accordance with the law except for the fact that there was not sufficient money in the general county fund or in the funds against which these obligations are charged to pay all of same." It is to be noted that the above-quoted section 3974, Code 1930, is section 5, chapter 225, Laws 1922.

We lay aside the contention on the part of the county that the objections are mere collateral attacks upon the order of the board, and that the objections are not sufficiently definite and specific, and we also lay aside the subsidiary contentions made by objectors, some of which are not well taken, and the others have not been urged to a conclusion or definitely supported in this record, and we go at once to the merits of the main question around which the contest has been waged; that is to say, does the fact that there were no funds on hand or insufficient funds to pay these obligations when they were incurred have the effect to render them void and beyond the power of the board to pay, as the board now proposes?

It is a familiar rule of statutory construction that, when several different sections of a Code deal with the same subject-matter, these sections are to be so interpreted that they shall harmonize not only with each other, so that each shall stand with as full effect as possible consistently with the other related sections, but that they shall each be made to fit into the general and dominant policy of the particular system of which they are a part.

In the first place, if section 5979 is to be given the unyielding and unexceptional construction contended for by appellees, namely, that never in any event shall any indebtedness be incurred by a county unless at the time there shall be sufficient money in the particular fund to pay such indebtedness, and that any indebtedness in-

curred to the contrary shall be void and utterly uncollectible, then at once by such construction section 5977 would in effect be stricken out of the Code, for there would no longer be left anything upon which it could operate or to which it could be made to apply; and, in the second place, such a construction would place it within the power of boards of supervisors to annul, by indirection, the mandatory requirements of all the several positive laws which appertain to the general system of which said section 5979 is only an integral part, and, while an important part, is not to be raised to the disproportionate dignity of a completely controlling part.

One illustration of the point last adverted to will be sufficient. Sections 158 and 164, constitution 1890, require that a term of the circuit and of the chancery courts shall be held in each county at least twice in each year. Let us suppose that either by intention or by neglect the board of supervisors should fail to levy, or have collected, sufficient taxes to pay the expenses of these courts, so that, when one of them is due to be held, there is no money in the particular fund out of which the judicial expenses of the county are to be paid. Shall it be said that on account of section 5979 it has thus been placed within the power of the board of supervisors to render nugatory and inoperative these mandatory sections of the constitution, and that, the said sections to the contrary notwithstanding, courts shall not be held in the county until the board of supervisors shall permit them to be held, by supplying the county treasury with the funds on hand to pay the expenses of the court? We have no hesitancy in answering that it was never the purpose of section 5979 to allow a board of supervisors thus by indirection to repeal or suspend any positive statute imposing pecuniary obligations on counties, those debts or obligations which the statutes, appertaining to the general objects and purposes of the county as a governmental unit, place in express terms or by

necessary implication upon the county, without regard to the wishes of the particular board of supervisors of the particular county. See State v. Stone County, 131 Miss. 689, 95 So. 683.

Within the last twenty years the demands upon the public treasuries, state, county, and municipal, have grown beyond that ever dreamed of before. Twenty years ago, for instance, the school children of the state patiently trudged for long distances over primitive roads to primitive schoolhouses, but today they are carried by motor transportation over improved highways to the modern consolidated school. And in a hundred ways everything else has expanded in like proportion. To meet these demands, public expenditures soon began to run out of proper bounds and the credit system was making serious inroads upon the solvency of county and municipal units. It became necessary for the legislature to put additional and more effective restraints on the appropriations of public funds and upon the making of public contracts. One among these was the quoted section 5979 by which it was intended to place the counties, so far as concerns those expenditures which are entirely optional or within the sole will and control of the boards, upon a cash basis, save only when the majority of the qualified electors should otherwise consent.

But, as already said, it was not the intention thereby to surrender to boards of supervisors the right or power to repeal or suspend the operation of positive laws which of their own terms and by their own force impose pecuniary obligations upon counties. Nor was there any such thought or purpose that boards of supervisors would become capable of superhuman foresight, and would always be able to estimate with infallible accuracy what would be in every event the requirements of an ensuing year. Thus there was the appropriate and wise provision in respect to emergencies, carried by said section 3974. We shall suppose that an unprecedented flood

has destroyed every bridge in the county, thereby cutting off all mail routes and practically every road to the schools, and isolating the people helplessly into narrow neighborhoods. What legislature, while providing adequate general restrictions as aforesaid, would be so lacking in wisdom as not to provide for immediate relief in such an emergency, and by what reason then can it be said that it was ever intended that section 5979 should control in such a situation, and should dominate over said section 3974, which expressly provides for emergencies? We must hold that section 3974 is not controlled by section 5979. If it were otherwise, not only would section 3974 practically disappear, but there would be occasions when, by reason of the limitations of human foresight, counties would be powerless, for a disastrous space of time, to perform the imperative duties and to render the essential service which was and is the purpose of their organization and existence.

All these three sections stand together, work together, and in their work each operates in its own particular place or station. Under the facts as shown by this record, a large part of the indebtedness for which this bond issue is proposed is to discharge obligations resulting by operation of law and which the board of supervisors has no rightful power to abrogate or suspend, and the others, as covered by the agreement between the parties, were on account of emergencies. The result therefore must be that the proposed bond issue is valid, and it will be so ordered.

Reversed, and decree here validating said bonds.